*S. L. Whipple,* (*W. R. Bigelow* with him,) for Willis.

---

WILLIAM M. BATES & another, trustees, petitioners.

Suffolk.   December 5, 1892. — May 23, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Devise and Legacy — Annuity — "Representative."*

A testator, by his will, gave annuities to his two sons, his daughter, his son in law, and his two sisters, each for the life of the annuitant, to a grandson an annuity "until my estate is settled," to a niece an annuity for ten years, and to F., another grandson, an annuity during his minority, and a certain sum when he attained his majority. He then provided as follows: "At the death of my last remaining child, including my son in law, L., I order my estate to be closed, and the amount left to be equally divided among my grandchildren and the representative of any deceased grandchild, excepting G., and E. the wife of J.; the part of E. I give in trust to her brother A., for her use, free from the claims of said J. or of his creditors, and at her death what may remain I wish to have equally divided among her sisters." To G. he gave a legacy of a certain sum. He also gave other annuities to several persons, one of which was to continue "during the life of W.'s widow, and during the life of his sister C." The others were given as follows: "I give annuities to the following persons, viz." Then followed a list of six names, with an amount after each. Some of these annuities were changed in amount by codicils, but they were all given generally without any express designation of the term for which they were to be paid. The will contained no *in testimonium* clause, and the last clause but one was as follows: "I hereby authorize a majority of my executors or trustees to pay to any one, or more than one, of my grandchildren, or the widows of my grandsons, that may be needy, any portion of surplus income from my estate, after all my legacies have been provided for, not exceeding one hundred dollars monthly to each; any allowance made to my granddaughter E., the wife of J., is to be placed in the hands of her brother A., for her use. And I desire that my estate may be divided as provided in my will, when all but one of my children are dead, and I order my trustees to keep in their hands" a stated amount of certain bonds and a specified number of shares of certain stock, "the income of which to be used, as far as needed, to pay the annuity due to such child, and .when the last child dies, this fund is to be divided and paid over, as was provided in my original will, to my grandchildren as specified therein." By a

codicil to his will, the testator excluded one of his granddaughters from sharing in the ultimate distribution of his estate, unless the share exceeded a certain sum, the value of an estate which he had purchased for her in his lifetime, and then she was to receive only the excess. Upon a petition by the trustees under the will for instructions, it appeared that the only annuitants living were one son, two grandsons, and three granddaughters of the testator; that his grandson F. and his granddaughter E. had died; and that some of the deceased grandchildren left a widow and children, and some died testate, and some intestate. *Held*, that the testator intended that the estate generally should be divided when all but one of his children were dead, but that certain specific property should continue to be held by the trustees, the income of which should be used in paying the annuity to the child who remained alive; that the amount and character of the funds to be retained by the trustees to pay such annuitant must be settled by a single justice; that the remainder of the estate was to be divided equally between the grandchildren living at the death of the last but one of the testator's children, and the representatives of the grandchildren who had died before that time; that the representatives of F. were entitled to share in the amount to be distributed; that the word "representative" meant the distributees of each deceased grandchild under the statutes of distribution, and not his executor or administrator; and that the share of E. should be divided equally among her sisters living at the time fixed for distribution.

PETITION, by the trustees under the will of Charles W. Cartwright, to obtain the instructions of the court as to the construction of the will. The case was heard by *Allen*, J., and reserved for the consideration of the full court. The facts appear in the opinion.

*D. A. Dorr*, for the petitioners, read the papers in the case.

*W. I. Badger*, for Helen H., George F., and Charles G. Newell.

*J. Fox*, for minors and persons not ascertained and not in being.

*H. V. Cunningham*, for Emma R. Sheldon.

*W. A. Gaston & F. E. Snow*, for Susan H. Folger and others.

*F. R. Jones*, for Melvin O. Adams, guardian *ad litem* of minor children of Frederic C. Sheldon.

*C. B. Southard*, for Frederic G., Charles E., and Annie M. Cartwright.

*R. D. Weston-Smith*, for Charles W. Cartwright.

*B. B. Jones & E. B. George*, for Everett B. and James S. Cartwright.

FIELD, C. J. It was said at the argument, that the will and codicils were written by the testator. On examining them, it seems probable that the will as originally written ended with the clause appointing Barry, Ruggles, and Bates executors and trustees. The clause immediately preceding this is as follows:

" At the death of my last remaining child, including my son in law, Leonard R. Sheldon, I order my estate to be closed, and the amount left to be equally divided among my grandchildren and the representative of any deceased grandchild, excepting George B. Cartwright, Jr., and Ellen M. Jones, the wife of Henry L. Jones; the part of Ellen M. Jones I give in trust to her brother, Edmund G. W. Cartwright, for her use, free from the claims of said Jones or of his creditors, and at her death what may remain I wish to have equally divided among her sisters."

Annuities were given in the preceding clauses of the will to his two sons, to his one daughter, to his son in law, and to his two sisters, each for the life of the annuitant; to his grandson, Charles E. Cartwright, an annuity of twelve hundred dollars " until my estate is settled," and to his niece, Ann G. Bates, five hundred dollars a year for ten years. He also gave to Frederic C. Sheldon, the son of the testator's son in law above mentioned, " during his minority," an annuity of six hundred dollars, and directed that, when he attained his majority, the sum of thirty thousand dollars should be paid to him. All these annuitants, except his son, Edward S. Cartwright, have died, and we are not called upon to consider what the construction of the will would be if any other of the persons who were given annuities expressly for life were still living. It is not improbable that the testator believed that his two sisters would die before the death of his " last remaining child." It is probable that, after having completed his will, as he supposed, he afterwards made an addition to it, and either copied the will with the additional clauses, or, if the will had not been executed, wrote the additional clauses at the end of it. The will, as it now appears, contains no *in testimonium* clause, and the last clause but one is as follows:

" I hereby authorize a majority of my executors or trustees to pay to any one, or more than one, of my grandchildren, or the widows of my grandsons, that may be needy, any portion of surplus income from my estate, after all my legacies have been provided for, not exceeding one hundred dollars monthly to each; any allowance made to my granddaughter Ellen Maria Jones, the wife of Henry L. Jones, is to be placed in the hands of her brother, Edmund G. W. Cartwright, for her use. And I

desire that my estate may be divided as provided in my will, when all but one of my children are dead, and I order my trustees to keep in their hands thirty thousand dollars of Mad River Railroad Bonds, and five hundred shares of Sandusky, Dayton, and Cincinnati Preferred railroad stock, the income of which to be used as far as needed to pay the annuity due to such child, and when the last child dies this fund is to be divided and paid over, as was provided in my original will, to my grandchildren, as specified therein."

In the will as it now appears, the testator gave annuities to several other persons, one of which, to Ellen M. Cartwright, was to continue " during the life of James Weld's widow, and during the life of his sister, Mrs. Cobb."

The other annuities were given in the following terms:

" I give annuities to the following persons, viz.: to Edward Wallace Cartwright, four hundred dollars; to Ann Eliza Richardson, six hundred dollars; to Sarah W. Galucia, six hundred dollars; to Ellen M. Jones, four hundred dollars; to Susan C. Folger, four hundred dollars; to James Weld Cartwright, twelve hundred dollars, and in case he leaves a widow one half, say six hundred dollars, is to be paid to her."

Some of these annuities were changed in amount by the codicils, but they still remain annuities, given generally without any express designation of the term for which they are to be paid. The only annuitants now living are Edward S. Cartwright, the son of the testator, and Edward Wallace Cartwright, his grandson, Ann Eliza Richardson, his granddaughter, Sarah W. Galucia, his granddaughter, Susan C. Folger, whose real name is alleged to be Susan H. Folger, his granddaughter, and James W. Cartwright, his grandson.

If the two clauses of the will which refer to the time for the distribution of the estate are inconsistent with each other, the case is peculiarly one for the application of the rule that the latter clause should govern. The latter clause plainly refers to the former as a part of the original will, and shows an intention to modify the former clause so far as the two clauses differ from each other. It may be said, however, that the former clause relates to the time when the estate shall be " closed," while the latter relates to a partial distribution be-

fore that time, and that thus they are not wholly repugnant to each other, but one is an amendment of the other. It is plain on the face of the will that the latter clause expresses the final intention of the testator, and that this intention was that the estate generally should be divided when all but one of his children were dead, but that certain specific property should continue to be held by the trustees, the income of which should be used in paying the annuity to the child who remained alive. That specific property was thirty thousand dollars of Mad River Railroad Bonds, and five hundred shares of Sandusky, Dayton, and Cincinnati Preferred Railroad Stock. The bill alleges that it "has been heretofore necessary to change" these securities, but it is not stated what changes have been made. The question is reserved, "What, if any, instructions the court will give the trustees as to the amount and character of the funds to be retained by them to pay the annuitant Edward S. Cartwright?" This must be settled by a single justice. The general rule is that an amount should be retained equivalent to the value of the securities named in the will when they have been converted into other property, or that the securities received in place of them, if they can be specifically traced, should be retained. We are not informed whether by this rule the amount to be retained would be more or less than would reasonably be required to pay the annuity to Edward S. Cartwright during his life, and a single justice can determine whether, on the facts appearing before him, there should be any modification of this general rule.

When the last child but one of the testator died, the time came for the distribution of the estate, except the portion which was to be retained by the trustees for paying the annuity to the last surviving child. This portion cannot be divided until Edward S. Cartwright dies. As to the remainder of the estate, the provision is "that my estate may be divided as provided in my will, when all but one of my children are dead," etc. This refers to the preceding clause. The amount left is "to be equally divided among my grandchildren and the representative of any deceased grandchild, excepting George B. Cartwright, Jr.," etc. This means that the amount is to be equally divided between the grandchildren living at the time of the death of the last but one of the testator's children, and the representatives of the grand-

children who have deceased before that time. Frederic C. Sheldon, a grandchild, has deceased, and the question reserved is whether his representatives are to share in the amount to be distributed, or whether the bequest of thirty thousand dollars to him was in full of his share in the estate. We infer from the statements contained in the bill, that the annuity given to. Frederic C. Sheldon during his minority, and the bequest of thirty thousand dollars to him when he attained the age of twenty-one years, have both been paid. There is nothing in the terms of this bequest of thirty thousand dollars to indicate that it was all which he was to receive. The testator expressly excluded his grandson, George B. Cartwright, Jr., to whom he gave a legacy of five thousand dollars, from receiving anything more when the estate was to be divided among his grandchildren and their representatives. By the first codicil he excluded Annie Maria Richardson, a granddaughter, from sharing in the ultimate distribution of his estate unless the share exceeded nine thousand dollars, which was the value of an estate which he had purchased for her in his lifetime, and then she was to receive only the excess over nine thousand dollars. He provided that the share of Ellen M. Jones, his granddaughter, should be put in trust. But there is nothing in the will or codicils indicating that he intended that Frederic C. Sheldon should stand any differently from the other grandchildren in the division to be ultimately made of the estate. Separate provisions of a will in favor of the same legatee are to be considered cumulative, unless a contrary intention is apparent from the terms of the will. The nature of the evidence offered to show that the testator did intend the contrary is not set out in the report. Extrinsic evidence generally is incompetent, and it does not appear that this was not. We think that the representatives of Frederic C. Sheldon are entitled to share in the division. See *Wainwright* v. *Tuckerman*, 120 Mass. 232.

The most difficult question relates to the disposition of the shares of those grandchildren who died before the death of the last child but one. Some of them left a widow and children, and some died testate, and some intestate. What is meant by the words "the representative of any deceased grandchild," found in the clause of the will relating to the division of the

property?  It is perhaps not very important to determine whether the grandchildren living at the testator's death took vested interests as of his death which opened and let in after-born grandchildren, but which were devested if they died before the time for distribution arrived, or whether the interests of the grandchildren were contingent upon their being alive at the time fixed for distribution with a gift to their representatives, if they died before that time, because in either case the grandchildren could assign their interests subject to the contingency. If " the representative of any deceased grandchild " means the executor or administrator of their estates, then the share appropriated to each deceased grandchild would be a part of his estate, as if his interest had absolutely vested in his lifetime. There is no doubt, if the word " representative " be held to mean executor or administrator, that under our laws either would take not for his own benefit, but for the benefit of the estate.   The principal cases, English and American, on this subject, are collected in 2 Jarm. Wills, (Bigelow's ed.) 957–967.   The decisions are somewhat conflicting, but we think that in the present case the word " representative " must mean either the executor or administrator of a deceased grandchild, or the distributees of the estate of a deceased grandchild, under our statutes of distribution.  It becomes necessary to determine which of these meanings was intended, because one of the deceased grandchildren left a will, and besides there may be claims of creditors upon their estates.   The word, as printed in the papers before us, is " representative," and not " representatives," but we do not attach much importance to that. We think that the intention was that the representatives of any deceased grandchild should take instead of such deceased grandchild, and should take to their own use.   On the whole, we incline to the opinion that the distributees of each deceased grandchild under our statutes of distribution are the persons intended.   See *Briggs* v. *Upton*, L. R. 7 Ch. 376; *Bridge* v. *Abbot*, 3 Bro. C. C. 224, 227 ; *Cotton* v. *Cotton*, 2 Beav. 67 ; *Smith* v. *Palmer*, 7 Hare, 225 ; *Walter* v. *Makin*, 6 Sim. 148 ; *King* v. *Cleaveland*, 26 Beav. 166 ; *S. C.* on appeal, 4 DeG. & J. 477 ; *Gibbons* v. *Fairlamb*, 26 Penn. St. 217 ; *Brokaw* v. *Hudson*, 12 C. E. Green, 135.; *Bronson* v. *Phelps*, 58 Vt. 612 ; *Baines* v.

*Ottey*, 1 Myl. & K. 465; *Palin* v. *Hills*, 1 Myl. & K. 470; *Davies* v. *Davies*, 55 Conn. 319; *Rivenett* v. *Bourquin*, 53 Mich. 10; *Thompson* v. *Young*, 25 Md. 450.

Ellen M. Jones died before the time came for division, and thus the right of possession never vested either in her or her trustee. If the right of property once vested in her, it was devested by her death. In the event which has happened there is no more difficulty in sustaining the bequest to her sisters, than in sustaining the bequest to the distributees of other deceased grandchildren, as these distributees all take directly under the will. The share of Ellen M. Jones should be equally divided among her sisters living at the time fixed for distribution.

It does not appear that any grandchildren of the testator died before his death, and the question does not arise whether the distributees of such grandchildren are to be included in the distribution. It was argued that Edward S. Cartwright, the living son of the testator, may yet have children, but if that is possible there is no provision in the will which requires the partial distribution to be postponed to await the birth of such grandchildren of the testator. Whether such grandchildren would share in the final distribution of the fund which the trustees are to hold for the purpose of paying the annuity to Edward S. Cartwright during his life, is a question not now before us.

The questions reserved must be answered according to this opinion.　　　　　　　　　　　　　　　　*So ordered.*