SAMUEL C. HOWELL

*v.*

ELIZABETH H. GIFFORD et al.

[Filed January 26th, 1903.]

1. A testator gave his estate to his wife, and after her death he provided that it should be equally divided among his children. If any of the children died without leaving issue him or her surviving, the share of the deceased child was to be divided among the other children. In the lifetime of the wife a son died leaving lawful issue.—*Held,* that the son's interest vested on the death of the testator, and that the contingency on which it was to be divested not having happened, it went, on the death of testator's wife, to the son's executor.

2. During the continuance of the life estate a son died, leaving issue, and after him a daughter, without issue.—*Held,* that on the death of the widow the "heirs or legal representatives" of the son would take the portion of the daughter's share, which the son would have taken had he·lived.—*Held, further,* that under the designation·"heirs or legal representatives" the "heirs" would take the real estate and the next of kin the personalty.

Mr. J. *Bayard Kirkpatrick,* for the complainant.

Mr. *Halsey M. Barrett,* for H. Clay Howell.

Mr. John R. *Hardin,* for the executor of Henry C. Howell.

Stevens, V. C.

This bill is filed to obtain a construction of the will of Theodore P. Howell. He died December 3d, 1878, leaving him surviving his widow, Elizabeth W. Howell, who died February 12th, 1903, and six children. Of these children, four—a son and three daughters—died in their mother's lifetime, and two—a son and daughter—survive her.

By this will testator gave to his wife, for life, "the use of the income and interest" of all his estate, real and personal, which interest and income, or so much thereof as she might require, to be paid to her by his executors for her and her daughters' support. The fourth paragraph of his will proceeds as follows:

"*Fourthly.* After the death of my said wife, Elizabeth, I will that the principal sum of my estate, with the accumulations thereof, and of which I have given to her the income thereof, be divided among all my children, each to have an equal share thereof; the parts or shares thereof going to my sons to be paid to them, but with respect to the parts or shares which will thus go to my daughters, I wish and direct the same to be kept and retained by my executors and safely invested and held in common fund, and the income and interest thereof paid to my said daughters during the term of their respective natural lives, each to have an equal share thereof and the same to be paid upon the respective individual receipt of said daughters. Upon the decease of either one of said daughters leaving lawful issue her surviving, then after the death of my said wife, I direct the portion of my estate of which I have thus given her the income, shall be paid to her said children, each to have an equal part thereof, and if any of said children be under age, then said payment is to be made to its legally constituted guardian. Should any of my said children, son or daughter, die without leaving lawful issue him or her surviving, then the share of the surviving son in such decedent's portion of my estate so held by my executors shall be paid said son or his heirs or legal representatives, but the daughters' shares in said decedent's portion shall be retained by my executors and continued in the common fund, and the interest and income paid, and finally, upon the death of said daughters, respectively, the principal, as hereinbefore is provided, for the payment of the income and principal of said daughters' shares of my estate."

Two questions are raised by the bill. The first relates to the shares of Henry C. Howell, testator's deceased son. He died in January, 1900, and left two children—Elizabeth H. Gifford and H. Clay Howell—both of whom are now living. The ques-

tion is, to whom, under paragraph 4, does Henry C. Howell's share go—to his executors or to his children?

The second question relates to the share of Elizabeth H. Mitchell. She died in October, 1900, after her brother Henry, without leaving issue. The question is, do "the heirs or legal representatives" of Henry take a proportionate part of Elizabeth's share, and if so, who are meant by this designation?

The answer to the first question is not doubtful. Henry took a vested interest in his share from the time of his father's death, payment being postponed during his mother's life. This share was subject to be divested only by his death, in his mother's lifetime, without leaving issue. The bare reading of the clause makes this evident.

"After the death of my said wife  *  *  *  I will that the principal sum of my estate, with the accumulations thereof,  *  *  *  be divided among all my children; each to have an equal share thereof, the parts or shares thereof going to my sons to be paid to them.  *  *  *  Should any of my said children, son or daughter, die without leaving lawful issue him or her surviving, then the share of the surviving son in such decedent's portion shall be paid," &c.

The gift to the survivors is found in the direction to pay or retain, and this payment is to be made on the happening of *one* contingency only, viz., death without leaving lawful issue. As the contingency did not happen, the gift became, at Henry's death, indefeasible. It was to go over if he died leaving no issue, and as he left issue, the vested estate which he took in the first instance continued. If it had not been so earnestly insisted that the cases of *Baldwin* v. *Taylor, 10 Stew. Eq. 78,* and *Denise* v. *Denise, 10 Stew. Eq. 163,* were opposed to this view, I should not have thought the case open to argument. That these cases are inapplicable to the present situation will be seen on a little consideration.

In the first place, there can be no question but that the estate vested in Henry at testator's death. It is true that the will provides, "*After the death of my said wife* I will that the principal sum be divided,  *  *  *  the parts or shares going to my sons to be paid to them," &c., and that this direction, standing alone, if no life estate had been interposed, would have made the gift

contingent; but, as the purpose of the postponement was to let in the interest of the widow, the estate vested at once. *Post* v. *Herbert's Executor, 12 C. E. Gr. 542; Miller* v. *Worrall, 14 Dick. Ch. Rep. 134* (affirmed on appeal). "It is immaterial," says Chancellor Green, in *Howell's Executors* v. *Green's Administrator, 2 Vr. 574,* "whether the gift to the legatee for life is of the fund or of the interest or use of the fund."

The precise point raised on behalf of Henry's children is that they take an estate by implication arising out of the words "should any of my children die without leaving lawful issue," &c. The argument is that, as testator had not, in terms, provided for the care of children dying leaving issue, and has only given the estate over in case they die without leaving issue, he must have intended the issue to take if he left any, and consequently he must be assumed to have given it to the issue. It is difficult to put this contention in plausible form, as applied to a cause like the present, for we at once ask ourselves, why imply an estate in the issue of the son, when, in express words, we find it given to the son himself.

In *Denise's Executors* v. *Denise, 10 Stew. Eq. 164,* testator gave to each of his seven children an equal share of his residuary estate, and then provided that, in case any of his said children should die without leaving lawful issue, the share of such as might die without issue was to be divided amongst the survivors, share and share alike. It was held that an estate, by necessary implication, was given to the issue of two children who died in their father's lifetime. Vice-Chancellor Van Fleet said: "No bequest, it will be observed, is made to the survivors unless the first legatee died without leaving lawful issue. It is clear, then, the survivors do not take. The contingency on which they were to take has not happened. Where, then, did the testator intend the shares of such of his children as should die before distribution, leaving issue, should go. *It is plain that he did not intend to die intestate as to any part of his estate.* A devise or bequest may arise from implication. * * * To create a bequest in that way the implication on which it is founded must be a necessary one." He then says: "I think it is quite apparent the testator intended that the issue of any of his children who should

dic before distribution should take that share of his residuary estate which his will gave to their parent."

This case appears to me to go to the verge of the law, and to rest upon no other foundation than the assumption that testator did not intend to die intestate. It may be doubted whether the assumption can properly be made since the passage of the act which provides (*Gen. Stat. p. 3763 § 34*) that when a legatee, being a child or other descendant of the testator, shall die during the life of the testator, the legacy shall not lapse, but the estate bequested shall vest in such child or children in the same manner as if such legatee had survived the testator and had died intestate; but assuming, as I must assume here, that the decision is correct, the case in hand is easily distinguishable. The will gave Henry Howell an estate absolute and indefeasible, except on a contingency, which has not happened, and consequently the only ground upon which the vice-chancellor rested his decision, viz., the supposed necessity of averting intestacy as to a portion of the estate, is here wanting. What is really sought, therefore, is not to obtain a construction which will avert intestacy, but one which will, by implication, first cut down the estate given, and then assign to Henry's children a part of that which the will, in terms at least, gave to Henry himself.

In the *Denise Case* no life interest had been interposed, and the testator's sons had died in their father's lifetime. Their shares never vested in them. Under the law as it was before the enactment above mentioned testator would have died intestate, as to their shares of the residue, unless a gift by implication had been raised in their issue, and it was this consequence which it was thus sought to avert. Death without issue meant, necessarily, death in the lifetime of testator. In the case in hand it means death in the lifetime of the tenant for life. *Salisbury* v. *Petty, 3 Hare 85, 93.*

The decided cases are in harmony with the conclusion I have reached on what seems to be the natural and obvious meaning of the words themselves. Thus, in the case of *Barnfield* v. *Wetton, 2 Bos. & P. 324,* testator devised to his wife for life, and from and after her decease he gave all his copyhold mes-

suages and premises unto his daughter, S. S., her heirs and assigns forever, "but if my said daughter shall happen to die leaving no child or children, lawful issue of her body, living at the time of her death," then he gave the same to F. B., &c. Both the wife and S. S. survived testator. It was held that S. S. dying without children, the devise over to F. B. was good as an executory devise. Lord Eldon used this language: "Whether the testator intended that the children's grandchildren should be benefited by this will or by some disposition to be made by S. S., if she had any children living at the time of her death, the estate being given to her in fee, *she* would have abundant power to provide both for children and grandchildren. Nothing, however, is given to *them* by this will. *They are merely named in the description of the contingency* in which the estate is to go over." The applicability of this decision to the case in hand lies here: Had the court held that the words "leaving no lawful issue of her body" gave an interest by implication to such issue, then S. S. would have taken an estate tail, and the executory devise over would have been void for remoteness.

In *Dowling* v. *Dowling, L. R. 1 Ch. 612,* a testator directed his residuary personal estate to be invested and the interest to be divided half yearly between his four sons, and at the decease of either without lawful issue such share to revert to the remainder then living or their child or children. The four sons survived testator, and it was held that each of them took an absolute interest in his share, subject to be divested in case of his dying without leaving issue, and that there was no gift by implication to the children of any who might die leaving issue. This case is stronger than the one in hand, for there it was plausibly argued that only the half yearly interest was given to the sons, and that this indicated nothing more than a limited benefit. Lord-Justice Turner said: "Surely the mere fact of a testator giving over property in case there are no children does not furnish any presumption on which this court can act in favor of his giving it to the children, if there are any, as against their parents. The testator might well suppose that they would be provided for from other sources, or that the parent would himself be able, by means of the gift, to provide for them."

*In re Rawlin's Trust, 45 Ch. Div. 304,* there was a gift for life to H. R., "and after the decease of my said niece, H. R., she leaving no child or children," then over. Lord-Justice. Cotton said: "It is said that those words imply a gift to the children. The law seems to be this: That where there is a life interest given to a person and then a gift over, if that person dies without leaving children, the gift over alone will not give the children any interest whatever." Now, this is a much stronger case in favor of the children than the case of *Dowling* v. *Dowling* and that under consideration, for in these the gift to the parent was, in terms, absolute, and the children might take through the parent; while in the case last cited the gift to the parent being for life only, the children would not, in any way, enjoy the benefit of it, and yet it was held that even in a case thus circumstanced the children would not take by implication.

I am clearly of opinion, therefore, that the share of Henry Howell vested·in him at testator's death, and that the contingency on which it was to be divided not having happened, it is now payable to his executors.

In the case of Elizabeth Mitchell the contingency happened on which her share was to go over. She survived her brother, Henry Howell, and died before her mother.· The question is who takes the proportionate part of her share which Henry would have taken had he survived her. I think it plain that it is Henry's "heirs or legal representatives"—whoever may be designated by those terms. *In Salisbury* v. *Petty, 3 Hare 86,* I. P. devised real estate to A for life, remainder on the death of A to his children, as he should appoint, charged with a sum. of £3,000 apiece to B, C and D *or* to their respective issue. C and D died in the lifetime of A, leaving issue, and it was held that the issue took by substitution for their parents. Vice-Chancellor Wigram says: "The cases collected by Mr. Jarman clearly show that if a legacy be given payable at the death of the testator, and, in case of the death of the legatee, to another party, there the court will construe the gift over, in the event of death, to mean in case of death in the lifetime of the testator; and, on the other hand, if the legacy is not payable immediately, but a life interest is given, and the testator says, in case of the

death of the legatee it is to be given to someone else, then the words 'in case of death' are construed to mean in the lifetime of the tenant for life—that is to say, before the money became payable." The only distinctions are that I interpose the words "in case of death," for that must be the meaning of the word "or." So here the word "or," in the connection in which it is used, shows that the "heirs or legal representatives" are to take by way of substitution for Henry. This is the principle of the decision in *Baldwin* v. *Taylor, 10 Stew. Eq. 78; S. C., 11 Stew. Eq. 637*.

But the question remains, who are the persons designated by the words "heirs or legal representatives?" By "heirs" are properly meant those upon whom the law casts the real estate immediately upon the death of the ancestor, and by "legal representatives" are meant executors and administrators. *Wms. Ex. 1013*. These words should be thus read, unless, from the context, it can be seen that testator intended them to bear some other meaning. "In construing wills," says Mr. Justice Van Syckel, in *Chandler* v. *Thompson, 17 Dick. Ch. Rep. 723*, "it must be presumed that words are used in their appropriate technical sense, * * * otherwise there will be no uniform rule of interpretation and no stable definition given to language which has a definite meaning in the law." The will under consideration, although not drawn with entire accuracy, appears to have been the work of a person not unfamiliar with legal phraseology. The question is, does the context indicate that testator intended to use the words "heirs" and "legal representatives" in any other than their primary signification? As to the word "heirs," I cannot find any such indication. The direction to convert realty into personalty is not imperative. The testator "authorizes and empowers" his executors to sell his land, but does not require them to do so. It is true that he wills that, after the death of his wife, "the principal sum" of his estate, with the accumulations, shall be divided among his children; but this indication of a purpose to reduce the whole estate to personalty and to divide it as such is more than met by his subsequent authorization to convert personalty into realty. This being so, there is no reason apparent on the face of the will why "heirs" should

not receive its technical meaning. With respect to the words "legal representatives," the case is, I think, different. The cases on this subject are luminously reviewed by Vice-Chancellor Kindersley in *In re Crawford's Trust, 2 Drew. 230.* The language there construed was "to be equally divided between all my cousins germane now existing or their representatives," and he gave to "representatives" its proper meaning of executors or administrators.

In *Stockdale* v. *Nicholson, L. R. 4 Eq. 359,* Vice-Chancellor Malins again examined the cases before and subsequent to *In re Crawford's Trust,* and, after stating that he regarded it as settled that the words "personal representatives," "legal personal representatives" and "legal representatives," when applied to personal estate unaccompanied by explanatory or controlling words, were to be construed as being equivalent to "executors and administrators," says that slight circumstances had been allowed to control the general effect of those words. In the case then before him it was held that the word "next" preceding the words "personal representatives" had such controlling effect, both because the word "next" had no connection with the character of executor or administrator and because it imported, in some form, consanguinity. In *Baines* v. *Otley, 1 Myl. & K. 465,* the gift was to M. K. for life, and in default of appointment "to and among such person and persons as would be the personal representatives." Lord Langdale said that it had been properly observed that the words "to and amongst," &c., were not applicable to executors or administrators. In *King* v. *Cleaveland, 4 De G. & J. 477,* the bequest was to certain nephews and nieces "or their personal representatives, share and share alike." The words "share and share alike" were considered as indicating that the personal representatives were not to take in their representative character, but that some persons were to take beneficially, those persons being the next of kin; it having been well settled, under a bequest to personal representatives, such representatives did not, in general, take beneficially. *Daniel* v. *Dudley, 1 Phil. 1; Holloway* v. *Clarkson, 2 Hare 523; Hawk. Wills 107; Halsey* v. *Paterson, 10 Stew. Eq. 445, 449.*

In *Walker* v. *Marquis of Camden, 16 Sim. 329,* the bequest

.was to testator's nephew, "if he should then be living, and if not, then to his legal representative or representatives," and Vice-Chancellor Shadwell held that, as testator had used the words "executors and administrators" five times in his will, it would be singular to say that when he departs from those words and used the term "legal representative or representatives" he meant "executors or administrators." · A somewhat similar case is *Walter* v. *Makin, 6 Sim. 148.* The reasoning in these last two cases is not very convincing, and its correctness is doubted by Vice-Chancellor Kindersley in the case before cited.

In *Halsey* v. *Paterson, 10 Stew. Eq. 445,* the bequest was immediately to the "legal representatives" of the husband, and Chancellor Runyon held that, as there was nothing beyond the words themselves to indicate the intention, those words must receive their proper signification of "executors." . He distinguished the case then before him from that of *Brokaw* v. *Hudson, 12 C. E. Gr. 135,* as being one in which there was an immediate, and not a substitutionary, gift. In the *Brokaw Case* Vice-Chancellor Van Fleet had held that where the substitutes of the primary legatee were described by the word "representatives" those would take who had the right to represent the primary legatee as next of kin under the statute of distributions. If this declaration of the vice-chancellor should be accepted in its generality, it would at once end the present controversy, for the gift under consideration is also substitutionary. But, as is shown in *In re Crawford's Trust, supra,* there is a clear distinction ·between those cases in which, like the present, a life estate is interposed, and those in which, like the case before Vice-Chancellor Van Fleet, the bequest, though substitutionary, is to take effect, if at all, immediately upon testator's death.

We must, then, examine the context. What does it show that testator meant by "legal representatives?" Outside of the words "heirs or legal representatives," I can find nothing to indicate a purpose or intention one way, or another. But the word "heirs" itself, in the connection in which it is used, possesses a peculiar significance. Its own meaning is plain and unambiguous. It designates those upon whom the law casts the land in case the ancestor dies intestate. It cannot be questioned

but that the heirs take the land immediately and beneficially. But if we give to the words "legal representatives" their primary signification of executors or administrators, those representatives will take in their representative capacity. There is a strong presumption against their taking beneficially. This is a well-settled rule, as shown by the authorities heretofore cited. They must, if executors, after paying debts, distribute the residue according to the son's will; or, if administrators, according to the statute of distributions. Now, if this substitutionary gift be to the legal representatives in this sense, we must suppose that testator intended that his land should go without reference to his son's will, if he left any, and that his personal property should pass under that will, or, at least, as a part of his son's estate; that his land should go to his son's heirs free from any obligation to answer his son's debts, but that his personal property should be subjected to those debts. This is not a reasonable view to take of testator's meaning. He could hardly have intended that the realty should go in one way and the personalty in another—that the one should go according to his own will and the other according to his son's. It would seem reasonably clear that as he intended to make a beneficial gift of the land to his son's heirs, so he intended to make a beneficial gift of the personal property to a class of persons which he denominates "legal representatives." But the class thus denominated is either "executors and administrators" or "next of kin." Here it must be next of kin, for it is highly improbable that he intended a personal benefit to persons in whom he had not the slightest interest. No violence is done to the words used, for next of kin do, in a sense, represent the testator very much as heirs represent the ancestor. All that is decided is that, having reference to the context, it appears that testator used those words in their secondary, and not in their primary, signification.

I think, therefore, that the land goes to the heirs and the personalty to the next of kin.

If counsel think there is any doubt about who are the next of kin entitled to take, and the question is material, I will hear argument upon it.