GEORGE M. FISHER, JR., Administrator d. b. n. c. t. a. of John Cleaver, deceased,

*vs.*

ABDIGAL E. BARCUS, SUSAN PATRICK, JOHN B. CLEAVER, JR., ANNA E. JONES, AMY VEDDER, JENNIE CATHARINE CLEAVER, GRACE GODWIN, Administratrix of Charles I. duPont Cleaver, ABDIGAL BARCUS, Administrator c. t. a. of Susan K. Cleaver, deceased, NATHAN BICKLING, Administrator of John S. Bickling, deceased, and NATHAN BICKLING, Administrator of Francene Bickling, WILLIAM COOK, GEORGE M. FISHER, JR., Executor of the Last Will and Testament of John B. Cleaver, deceased, and JENNIE CATHARINE CLEAVER, Executrix of the Last Will and Testament of George H. Cleaver, deceased.

*Kent, Nov. 8, 1924.*

Where will provides that, at widow's remarriage or death, property shall be sold and proceeds divided between children or their "lawful representatives," "lawful representatives" will be construed as meaning executors or administrators, and not heirs.

Where will creates life estate in widow, at her remarriage or death same to be "sold and proceeds or money to be equally divided between my children or their legal representatives," the substitutionary legatees being executors or administrators, testator's children take vested transmissible interest.

Will providing that, at end of life tenancy, estate is to be sold, and proceeds equally divided between remaindermen or their legal representatives, creates an equitable conversion, and judgments previously taken against remainderman do not attach as lien.

Remainderman, having vested interest, may assign or dispose of same.

BILL FOR INSTRUCTIONS. The bill requests a construction of the will of John Cleaver, deceased. The will is a very short one. It provides for the burial of the testator and the payment of his debts and gives two legacies of $200.00 each towards defraying the expenses of the education of two sons. It names the testator's wife and one son as executrix and executor. The foregoing is the entire contents of the will outside of the following:

"(3) Third. The residue of my estate real and personal I give bequeath and dispose of as follows to wit: To my wife Susan I give and bequeath my farm with all the appurtenances thereunto belonging situated near the Town of Marydel in West Dover Hundred, Kent County, State of Delaware to have and to hold as a home as long as she the said Susan Cleaver remains a widow.

"Fourth. I direct that at her remarriage or death that the farm be sold and the proceeds or money be equally divided between my children or their lawful representatives.

"Fifth. To my wife Susan I give and bequeath all of my personal property as long as she remains a widow at her remarriage or death the personal property shall be sold and the proceeds or money equally divided between my children or their lawful representatives."

The quoted language is what the bill asks the court to construe.

The testator died in 1885, leaving to survive him his widow, Susan Cleaver, and five children, viz., Abdigal E. Barcus, Susan Patrick, George H. Cleaver, Charles I. du Pont Cleaver and John B. Cleaver.

The widow took possession of the farm mentioned in the third item of the will as devisee thereof for life. She never remarried.

She died in October, 1921. Thereafter the administrator d. b. n. .c. t. a. sold the farm in execution of the will.

Two of the five children, viz., Abdigal E. Barcus and Susan Patrick, are still living and are parties defendant.

George H. Cleaver, another child, survived his mother and died intestate without issue in 1923, since the sale of the farm. By his will he devised and bequeathed all of his estate of whatsoever kind of which he was or might become seized or possessed and to which he was or might become entitled at the time of his death to his wife, Jennie Catharine Cleaver, one of the defendants, whom he names as his sole executor.

Charles I. du Pont Cleaver, another child, disappeared in the month of January, 1905, leaving his home, wife and child, and has not been heard of for upwards of eighteen years. The bill alleges that he is presumed by the law to be dead. He left no last will or testament. His wife is now dead. He left one child, Grace Godwin, who individually and as administratrix of her father is joined as a party defendant. Before his disappearance he executed and delivered an instrument of writing, dated December 17, 1904, purporting to convey and transfer unto John S. Bickling and Francene Bickling, whose administrators are made parties defendant by the bill, all the share or interest which he, the said Charles I. du Pont Cleaver, had in the farm directed to be sold by his father's last will and testament or in the proceeds derived from the sale thereof. There are of record in the office of the prothonotary of Kent County, the county in which the Cleaver farm is located, three judgments against Charles I. du Pont Cleaver entered respectively on August 3, 1897, June 2, 1904, and July 9, 1904, for the respective amounts of $250.00, $200.00 and $400.00 and interest. The plaintiffs in two of these judgments and the administratrix of the plaintiff in the other are joined as parties defendant in the bill.

John B. Cleaver, another child, predeceased his mother in November, 1920, leaving to survive him three children, viz.; John B. Cleaver, Jr., Anna E. Jones and Amy Vedder, three of the above-named defendants. He left a last will and testament by which he disposed of his entire estate of whatever nature. The

terms of his will are not necessary to set forth. His executor is made a party defendant in this cause.

The bill sets forth the conflicting claims made by the various parties defendant concerning the manner in which the proceeds from the sale of the farm now in the hands of the complainant should be distributed, and prays the instruction of the court with respect thereto. Answers have been filed by all the defendants who embrace all the parties in interest. Only one defendant, however, viz., William Cook, has appeared by a solicitor.

*Henry Ridgely*, for the complainant.

*Thomas C. Frame, Jr.*, for the defendant Cook.

THE CHANCELLOR: The character of decree to be entered in this cause will be determined by the answer to be given to the principal question, viz.: What is the meaning of the words "lawful representatives" in that clause of John Cleaver's will which directs that his farm be sold after the remarriage or death of his wife and the proceeds divided between his "children or their lawful representatives"? Does this word mean personal representatives, that is executors or administrators, or does it mean heirs at law or next of kin?

The Chancellor in *In re Nelson's Estate*, 9 *Del. Ch.* 1, 74 *Atl.* 851, observed that "taken by itself, the word 'respresentative' *prima facie* means executor or administrator." This is undoubtedly the general rule. Where, however, the immediate context or the whole will when considered in all its language indicates an intention otherwise, the *prima facie* meaning of the word will give way to the manifest intent. Accordingly in the will which was before the Chancellor in the case of *Nelson's Estate* the word "representatives" was held to mean next of kin or distributees and not executors. This conclusion was impelled by the following considerations, viz., that the word "representatives" appeared in conjunction with the word "heirs"; that if "representatives" meant "executors" then the manifestly impossible result would follow of a substitutional gift to distributees and executors, and further that the word "ancestor" appearing in the context imported a blood relationship and not an official one.

In the instant case it is unnecessary to review the cases which, while accepting the general rule as to the *prima facie* meaning of the words "representatives," "legal representatives," "lawful representatives" or "personal representatives," illustrate by their rulings what peculiarities of context will serve to give to such words a meaning different from their ordinary one. Such a review is to be found in the English case of *In re Crawford's Trusts*, 2 *Drew.* 230, and in the American case of *Howell v. Gifford*, 64 *N. J. Eq.* 180, 53 *Atl.* 1074.

The pertinent language of the will in the instant case is very brief. It simply directs that at the marriage or death of the testator's widow, "the farm be sold and the proceeds or money be equally divided between my children or their lawful representatives." There is nothing appearing anywhere in this will upon which to hang the suggestion that the words "lawful representatives" were used by the testator in any sense other than that which the law uniformly accords to them as their ordinary meaning. The case of *In re Crawford's Trusts*, *supra*, appears to be on all fours with this one where the language of the gift was of a life interest in certain funds, remainder "to be equally divided between all my cousins german now existing, or their representatives." The Vice· Chancellor, Sir R. T. Kindersley, in a learned and discriminating opinion held that in the absence of a countervailing suggestion to the contrary to be found in the will itself, the word "representatives" meant executors or administrators. Likewise in a bequest quite similar in language, the Chancery Division in *Cumberlege v. Cumberlege*, L. R. 45 *Ch. Div.* 269, held that the word "representatives" in the clause "to be equally divided between the three or their respective representatives" meant the same as executors or administrators. Cases have been called to my attention which give to such words other than their ordinary and primary meaning. But these cases will be found to rest upon the particular language of the will then before the court for construction which in each one of them is such as to reveal, in the judgment of the court, a disclosed intention on the part of the testator to use the words in a special sense. Even though in a given case the critical mind may think the court erred in gathering from the particular context the conclusion that the words were used in a peculiar

sense, it nevertheless remains true that the search of the context for a special meaning constitutes a clear recognition of the general rule that in the absence of an appearance in the will to the contrary the usual and ordinary meaning of the words must be given to them. The only case to which my attention has been called which in any wise could be said to countenance the thought that "representatives" will be held, in the absence of a controlling context, to mean distributees rather than executors or administrators is the case of *Bates, Petitioner*, 159 *Mass.* 252, 34 *N. E.* 266. I say this not because of any language to that effect appearing in the opinion in that case, but because the construction given to the will there under review might be said to argue that such must have been the view of the court. The court, however, in that case gives no reasons for its conclusion, and we are therefore left in the dark as to whether the court were of the opinion that the word "representatives" standing alone without any coloring context is to be understood as meaning the same as distributees. In the later Massachusetts case of *Bailey v. Smith*, 214 *Mass.* 114, 101 *N. E.* 62, however, the same court cited the case of *Bates, Petitioner*, as authority for the proposition that if the context of the will so indicates, the words "or their representatives" will be given the meaning not of executors or administrators but of distributees. I think, therefore, that whatever might be the view as to the correctness of the particular decision in *Bates, Petitioner, supra*, it cannot be said, in view of the understanding of that case which the same court later expressed, that the authority of the Supreme Judicial Court of Massachusetts can properly be cited in opposition to the general rule as I have hereinbefore stated it to be.

The will now before me is bare of elucidating context and to go outside of its language in the search for a reason to hold that "lawful representatives" does not mean executors or administrators would be but to enter the field of speculation concerning the testamentary intent, a thing which under such circumstances as are here found I am not warranted in doing. I must therefore hold that the words "lawful representatives" mean executors or administrators.

In view of what has already been said, the will in question is to be read as though it said "between my children or their execu-

tors or administrators." Had the language been "between my children and their executors," it is undoubted that, on the children surviving the testator as they did, each would have acquired a transmissible vested interest in the proceeds payable at the decease of their mother. Does the appearance of the word "or" instead of "and" make any difference in the result?

Generally speaking the disjunctive word "or" indicates a substitutionary intent. I suppose it would not be disputed that if a bequest after a life estate is to A. or his distributees, the latter in case of A.'s death before the termination of the life interest would take as *personæ designatæ* by way of substitution. The distributees would in such case take in their own right and not in right of A. *In re Nelson's Estate, supra.* In the cited case by construction the words "and the heirs and representatives" were held to mean "or distributees." So also, whatever may have been the rule formerly, the weight of authority now is that a gift after a life estate to "A. or his heirs" creates a substitutionary right in the heirs, who in case of A.'s death before the period of payment take in their own right as substitutes in place of A. in whom no transmissible and indefeasible interest had vested. *In re Porter's Trusts*, 4 *K. & J.* 188; *Finlason v. Tatlock, L. R.* 9 *Eq.* 258; *Whitehead v. Lassiter*, 57 *N. C.* 79; *Heyward v. Heyward's Ex'rs.*, 7 *Rich. Eq. (S. C.)* 289. Where, however, the executors or administrators of A. are made the substitutionary legatees they take in his right and as representatives of his estate. The substitute for A. in such case is therefore in effect A. himself. Hence it follows that where after a life estate the bequest is to A. or his executors, it is held that the intention is to give a vested interest to A. That this is so is exemplified by those cases which decide that where a legacy is in this form, viz., remainder after a life estate to A. or his executors, the legacy lapses if A. die in the lifetime of the testator. *Corbyn v. French*, 4 *Ves.* 418; *Bone v. Cook, McClel.* 168; *In re Porter's Trusts, supra.* In the last cited case the Vice Chancellor, Sir W. Page Wood, said:

"I should most strictly follow the authorities of *Corbyn v. French and Tidwell v. Ariel* to this extent, that where there is a bequest to A. for life, and after her decease to B. or his 'executors,' or to B. 'or his personal representatives,' or a bequest to B. to be paid so many months after the testator's de-

cease to him 'or to his personal representatives,' it is simply another way of giving a vested interest to B. upon the testator's own death, and if B. die before the testator, the bequest shall lapse; but if instead of 'personal representatives' the word 'heirs' be used, as here it is used, I apprehend that circumstance shows an intention on the part of the testator that the persons he designates as 'heirs' are to take by way of substitution whenever B. may die, and the bequest will not lapse although B. may die in the lifetime of the testator."

The adjudicated cases therefore appear clearly to draw a marked distinction between those cases where the substitutionary legatees are "executors" or "representatives" or the like, and those cases where they are described as "heirs," a distinction which upon reflection will be seen to rest upon sound reason. In the former the intent is deduced from the language employed to create a vested, transmissible interest in the remainderman, and in the latter an intent to create a substitutionary interest in the heirs or distributees.

Having reached this conclusion the answer to be given to the question propounded by the case now before me is plain. All the testator's five children survive him. Each acquired a vested transmissible interest in the proceeds of the farm payable upon the death of the testator's widow. This being so, I now proceed to state what disposition the complainant should make of each of the five shares.

To each of the two children now living, viz., Abdigal E. Barcus and Susan Patrick, a one-fifth part should be paid.

Another one-fifth should be paid to each of the executors of George H. Cleaver and John B. Cleaver, both of whom died leaving wills, to be applied by each in the due execution of their testate's estates.

There remains the one-fifth to be disposed of which was bequeathed to the son, Charles I. duPont Cleaver. His judgment creditors are not entitled to receive it. While his share constituted a vested transmissible interest, yet it was an interest not in real estate but in personalty. The language of the will operates to create an equitable conversion of the land into money, and Charles' share is therefore to be regarded as personal property. *In Nelson's Estate, supra; In re Stevenson's Estate*, 2 *Del. Ch.* 197. A judg-

ment, of course, does not attach as a lien upon personalty. In his lifetime, Charles assigned his interest to John B. and Francene Bickling, whose administrators are parties defendant. It was competent for him to assign and dispose of such a vested interest as he had (*Kean's Lessee v. Hoffecker*, 2 *Har.* [*Del.*] 103, 29 *Am. Dec.* 336) and his share should therefore be paid to the administrators of his assignees.

Let a decree be prepared in accordance with the foregoing.