JESSIE B. GILMORE & others, trustees, *vs.* JESSIE B. GILMORE
& others.

SAME *vs.* SAME.

Middlesex.    December 5, 1921. — March 3, 1922.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Trust,* Construction.    *Devise and Legacy.    Words,* "Legal representative."

By a trust created by a will, it was provided that, upon the death of the testator's
widow, "each of my said children . . . [three daughters specifically named]
or their legal representative, if any has deceased, is to receive the sum of $10,-
000." At the death of the widow, one daughter survived; a second had died
testate, bequeathing her jewelry, devising her real property to her two sons,
one of whom was a minor under guardianship and the other of whom had
died intestate before the testator's widow, and giving her household furnish-
ings and the rest, residue and remainder of her property to her husband; and
the third daughter had died intestate, leaving surviving her a daughter and
a husband. *Held,* that

(1) The words of the testator were free from doubt;

(2) The gift was absolute;

(3) Distribution of the share given to the "legal representative" of each
deceased daughter was to be among those who would respectively have inherited
the personal property of such legatee, to be ascertained as of the date of her
death;

(4) The $10,000 given to the "legal representative" of the second daughter
should be paid, one third to her husband, one third to the administrator of
the estate of the deceased son, and one third to the guardian of the surviving
son;

(5) The $10,000 given to the third daughter should be paid, one third to
her husband and two thirds to her daughter.

A testator by his will provided that there be placed in trust "$10,000 for each of
my grandchildren now living," naming them, to be invested and expended for
their education "until he or she arrives at the age of thirty . . . years, at
which time said sum and its accumulations, or whatever remains thereof not
expended . . . shall be paid unto him or her to hold absolutely. After each
grandchild arrives at the age of twenty-one years however" all the income
coming to each grandchild was to be expended. "In the event of the death
of any grandchild before arriving at the age of thirty . . . years, this fund
or any balance thereof held . . . for such deceased grandchild shall revert to
and be paid into my residuary estate and be disposed of as provided therein."
A subsequent clause of the will disposed of the residue of the estate. One of
the grandchildren named having died before reaching the age of thirty years,

the trustee sought instructions as to the disposition of his share. At that time a second grandchild was under age and a third was over twenty-one years of age, but it did not appear whether he was thirty years of age. *Held,* that

(1) The share of the grandchild who had died under thirty years of age fell into the residue;

(2) The grandchild under age was entitled to have the income expended for his education as the will provided;

(3) The grandchild who was of age was entitled to the income if not yet thirty years of age, and to the principal sum of $10,000, if he had become thirty years of age.

A testator provided, as to a trust fund, the income of which was given to his children for life, who were to receive yearly at least $6,000, "If therefore the income hereby made payable unto them does not furnish each with such sum of six thousand ($6000) dollars yearly, it is my will and direction that any deficit shall be taken from and charged to the principal of this trust fund." The will also provided that, upon the death of one of the children leaving issue, the income allotted to that child should be expended for the education of such issue "until they shall arrive successively at the age of twenty-one years, if they shall so long live. And to those already at that age at the time of the death of any of my said children, and to the others as they shall successively arrive at the age of twenty-one years, the Trustees shall pay to each such portion of the trust property so held for their benefit (and formerly held for the benefit of said deceased child) as the Trustees shall adjudge to be a fair and proportionate share." Other portions of the will showed that the testator intended equality of participation when the time for distribution came. One of the testator's children died leaving a daughter, and, upon her becoming of full age, the trustees sought instructions as to the disposition of the share of the principal formerly held for her benefit. A son of another deceased child of the testator still was a minor and was under guardianship. *Held,* that

(1) The provision, above quoted, permitting drafts from the principal to insure the income of $6,000 yearly to each child of the testator, was applicable only to the entire fund before a partial distribution became necessary and did not justify a withholding of distribution to the daughter of the deceased child of the testator;

(2) The daughter of the deceased child of the testator, who had come of age, should be paid, as "a fair and proportionate share" of the principal, the entire portion of the principal sum formerly held for her benefit;

(3) The share of income of the minor son of the other deceased child should be paid to his guardian. It was unnecessary to decide what disposition should be made of his share, in the event of his death during minority.

Where the Attorney General declined to become a party to a suit in equity by a trustee seeking an instruction, among others, as to whether any sum was due the Commonwealth as a succession tax, that question should be left for settlement as provided by law.

Two BILLS IN EQUITY, filed in the Probate Court for the county of Middlesex, respectively on May 28, 1920, and on December 14, 1920, by the trustees under the will of George O. Whiting, late of Lexington, for instructions.

The material portions of the will of George O. Whiting were as follows:

"Thirteenth: I direct my Executors to pay unto my said Trustees the sum of ten thousand ($10,000) dollars for each of my grandchildren now living namely, Helen Whiting Davis, George Whiting Mitchell and David E. Mitchell Jr., and also the sum of ten thousand ($10,000) dollars for each and every grandchild hereafter born and living at the time of my decease.

"Said sum of ten thousand ($10,000) dollars for each said grandchild my said Trustees shall have, hold, invest, re-invest, use and expend, both principal and income, in manner following: —

"For the education, whether in music, travelling or otherwise, and support, (if in the opinion of the said Trustees an expenditure therefrom for any of these purposes is expedient and proper, and said Trustees are to be the sole judges of such expediency, and of the amount of income and principal necessary and proper to be expended) of each such grandchild until he or she arrives at the age of thirty (30) years, at which time said sum and its accumulations, or whatever remains thereof not expended by said Trustees as aforesaid, shall be paid unto him or her to hold absolutely.

"After each grandchild arrives at the age of twenty-one (21) years, however, said Trustees shall pay to or expend for such grandchild at least all the income derived from said ten thousand ($10,000) dollar fund.

"In the event of the death of any grandchild before arriving at the age of thirty (30) years, this fund or any balance thereof held by said Trustees for such deceased grandchild shall revert to and be paid into my residuary estate and be disposed of as provided therein.

"Fourteenth: All the residue and remainder of my property and estate, whatsoever and wheresoever, whether acquired hitherto or hereafter, of which I may die seized and possessed, or to which I may be entitled at the time of my decease, I hereby give, devise and bequeath unto my said Trustees hereinbefore named, to have and to hold the same unto and to the use of them, their heirs and assigns, upon the following trusts, that is to say, to hold the said property invested as they may receive the same, or at their discretion to mortgage or to sell the same or any part thereof, and

any property at any time held upon these trusts, by public or private sale, without the aid of any Court — the purchaser in no event to be answerable for the application of the purchase money — making all suitable deeds and transfers thereof, and to invest the proceeds of all such sales according to their best judgment, to collect the rents and income of said trust property original and substituted, and after deducting the expenses of taxes, insurance and repairs, and all other necessary and proper charges and expenses, to apply, use and expend the net rents, profits or income in quarter-yearly payments as follows: —

"1. Pay unto my said wife, Laura M. Whiting, for and during the term of her natural life the sum of twelve thousand ($12,000) dollars yearly.

"It is my will that my said wife, Laura M. Whiting, shall receive yearly the said sum of twelve thousand ($12,000) dollars,

"If, therefore, the income to her coming under this clause does not reach that amount, it is my will that the deficit shall be paid to her from the principal of this trust fund.

"In other words, my said wife is to receive whether from income or principal the sum of twelve thousand ($12,000) dollars each and every year of her natural life.

"2. Pay unto each of my daughters, Emma S. Davis, Jessie B. Gilmore and Grace Mitchell, for and during the life of my said wife, all the remainder of said net rents, profits and income in equal third parts and shares.

"It is my will however that each of my said children shall receive yearly from my estate during the life of my said wife at least the sum of three thousand ($3,000) dollars: If, therefore, the income hereby made payable to them does not furnish each with such sum of three thousand ($3,000) dollars yearly, it is my will and direction that any deficit shall be taken from and charged to the principal of this trust fund:

"Upon the decease of my said wife, each of my said children, Emma S. Davis, Jessie B. Gilmore and Grace Mitchell or their legal representative, if any has deceased, is to receive the sum of ten thousand ($10,000) dollars, and I direct said Trustees to pay to each said amount, and as to all the rest and residue of said trust fund this trust shall continue, the said Trustees shall have, hold and use the same in the same manner and with the same powers

and continuing any annuities and devises hereinbefore given and not ended by my said wife's death, pay over the remaining net rents, profits or income, in quarter-yearly payments in equal parts and shares unto my said children Emma S. Davis, Jessie B. Gilmore and Grace Mitchell, an equal third part thereof unto each for and during the term of her natural life.

"And it is my will that after my said wife's decease each of my said children shall receive yearly from my estate at least the sum of six thousand ($6,000) dollars: If therefore the income hereby made payable unto them does not furnish each with such sum of six thousand ($6000) dollars yearly, it is my will and direction that any deficit shall be taken from and charged to the principal of this trust fund.

And I do further provide

"1. That upon the death of any of my said children leaving issue under the age of twenty-one years, the said Trustees shall have, hold, apply and expend the share of the income above allotted to such my child at their best discretion equally for the benefit, education and support of such issue until they shall arrive successively at the age of twenty-one years, if they shall so long live. And to those already at that age at the time of the death of any of my said children, and to the others as they shall successively arrive at the age of twenty-one years, the Trustees shall pay to each such portion of the trust property so held for their benefit (and formerly held for the benefit of said deceased child) as the Trustees shall adjudge to be a fair and proportionate share. In the event of the death of such issue before arriving at the age of twenty-one years, the share which he or she would have received when of full age my said Trustees shall pay unto the brothers and sisters, if any, of such deceased issue when arriving at full age.

"2. That, in the event of the death of all issue of any deceased child before arriving at the age of twenty-one years, and also in the event of the death of any of my said children leaving no issue living at the time of her decease, it is my will that the share held by said Trustees for such deceased child or for the issue of such deceased child shall be held by them, and the income therefrom paid by them, for the use and benefit of any children of mine then living, in equal shares, for and during the natural lives of such surviving children.

"3. That, upon the death of all my said children, all said income shall be held, used and expended by said Trustees for the benefit of any and all grandchildren of mine in equal parts and shares, until such grandchildren shall arrive at the age of twenty-one years, and to such grandchildren already at that age at the time of the death of all my said children, and to the others as they shall successively arrive at said age the Trustees shall pay unto each an equal part and share of said trust property.

"4. That in the event of the death of all my children leaving no issue, said Trustees shall transfer, pay over and deliver said Trust Fund unto my heirs-at-law."

After the filing of the first bill, it was amended to aver the death on November 10, 1920, of the widow of the testator, Laura M. Whiting.

Material facts alleged in the bills and amendment, which were not traversed, are described in the opinion.

The instructions sought by the trustees in the first suit were: —

"First: (a) For whom and in what manner and proportion they hold said sum of $13,915.83 [accumulated under section 'Thirteenth' awaiting the arrival of George Whiting Mitchell at the age of thirty years who had died under that age] of which $10,929.04 is principal and $2,986.79 is income accumulated thereon and unexpended on March 13, 1920, date of death of George Whiting Mitchell . . . (b) What disposition if any is to be made of either or both said sums. (c) To whom and in what proportion they are to pay any income derived from either of said sums since said March 13, 1920.

"Second: (a) For whom and in what manner and proportion they hold any income derived on the remainder of the trust fund held by them under said section Fourteenth due to and accumulated for said George Whiting Mitchell on said March 13, 1920, date of his death . . . (b) What disposition if any is to be made thereof. (c) To whom and in what proportion they shall pay the same.

"Third: (a) For whom and in what manner and proportion they hold the income now and hereafter received since said March 13, 1920 on that share of the fund held under the said section Fourteenth which said George Whiting Mitchell would have received if he had lived to the full age of twenty-one years . . .

(b) To whom and in what proportion they shall now and hereafter pay the same.

"Fourth: (a) For whom, for what purposes and in what manner and proportion, that portion of the trust property formerly held for the benefit of Emma S. Davis a child of testator who died January 15, 1920, has been held by them since said January 15, 1920 and is now held by them . . . (b) Whether or not said portion or any part thereof became distributable, due and transferrable upon the death of said Emma S. Davis on January 15, 1920, to Helen Whiting Davis her only issue. (c) Whether or not said Helen Whiting Davis upon the death of Emma S. Davis became seized in fee of said portion subject only to liens and claims set forth in said section Fourteenth and if yes, what liens and claims her title is subject to.

"Fifth: Whether or not there is any sum due the Commonwealth of Massachusetts for taxes in any way . . . " chapter 563 of the Acts of 1907, on account of chapter 527 of the Acts of 1909, both acts entitled " An Act relative to the taxation of legacies and successions" or under any Act supplemental, additional or amendatory to said Acts, and if so, how much."

The instructions sought in the second suit were as follows:

"First: To whom and in what proportion they shall pay the sum of $10,000 given in said will to the legal representative of Grace Mitchell, a child of testator who predeceased testator's wife, and any interest that may accrue thereon since November 10, 1920, date of said wife's decease.

"Second: To whom and in what proportion they shall pay the sum of $10,000 given in said will to the legal representative of Emma S. Davis, a child of the testator who predeceased said testator's wife, and any interest that may accrue thereon since November 10, 1920, date of decease of said wife.

"Third: Whether or not there is any sum due the Commonwealth of Massachusetts for taxes in any way. . . ."

The suits came on to be heard before *Leggat,* J. The Treasurer and Receiver General of the Commonwealth and the Commissioner of Corporations and Taxation stated that they did not desire to be heard. It appearing that all the answers admitted that the facts set forth in the bills were true, the judge reported "the same as uncontradicted evidence," and under G. L. c. 215,

§ 13, reserved and reported the suits for determination by this court.

*J. R. Cotton,* for the trustees, stated the cases.

*M. Wambaugh,* for David E. Mitchell, executor of the will of Grace Mitchell.

*H. W. B. Cotton,* for Charles B. Davis.

*H. F. Knight,* for David E. Mitchell, Jr., the Commonwealth Trust Company, guardian, and H. F. Knight guardian *ad litem.*

*E. B. Caiger,* guardian *ad litem, pro se,* submitted a brief.

*D. E. Mitchell, pro se,* submitted a brief.

BRALEY, J. The testator, after providing for the support of his wife by the payment of a fixed annual amount during her life, gave to Emma S. Davis, Jessie B. Gilmore and Grace Mitchell, his three daughters, all of whom survived him, "for and during the life of my said wife, all the remainder of said net rents, profits and income in equal third parts and shares," payable yearly during the life of their mother, with a further provision that, if the minimum income did not equal a certain sum, any deficit "shall be taken from and charged to the principal of this trust fund. Upon the decease of my said wife, each of my said children, . . . or their legal representative, if any has deceased, is to receive the sum of ten thousand . . . dollars, and I direct said Trustees to pay to each said amount, and as to all the rest and residue of said trust fund this trust shall continue, the said Trustees shall have, hold and use the same in the same manner and with the same powers and continuing any annuities and devises hereinbefore given and not ended by my said wife's death, pay over the remaining net rents, profits or income, in quarter-yearly payments in equal parts and shares unto my said children Emma S. Davis, Jessie B. Gilmore and Grace Mitchell, an equal third part thereof unto each for and during the term of her natural life. And it is my will that after my said wife's decease each of my said children shall receive yearly from my estate at least the sum of six thousand . . . dollars: If therefore the income hereby made payable unto them does not furnish each with such sum of six thousand . . . dollars yearly, it is my will and direction that any deficit shall be taken from and charged to the principal of this trust fund."

The widow died November 10, 1920, leaving Jessie B. Gilmore as the only surviving daughter. By her will Grace Mitchell, after

bequeathing her jewelry and devising her real property to her two sons George W. Mitchell, who died on March 13, 1920, under age and within a year after his mother's death and whose administrator, George Gilmore, is a defendant, and David E. Mitchell, Jr., who is still in his minority and whose guardian, the Commonwealth Trust Company of Pennsylvania, is a defendant; and giving the household furnishings of every nature to her executor, David E. Mitchell, who was her husband, also gave and bequeathed to him all "the balance and remainder of my property." The other daughter died intestate leaving a husband Charles B. Davis and Helen Whiting Davis, her only child, who is of full age.

The period of partial distribution of the principal was fixed by the death of the testator's widow. The first question is to whom shall that portion of the principal given to Grace Mitchell and Emma S. Davis, be paid? The words of the testator are free from all doubt. If when distribution is to be made a daughter is not living the share coming to her is to be paid to her "legal representative." The gift is absolute. The testator declares that each daughter is to receive "ten thousand dollars" if living at the termination of their mother's estate for life, and if not living, her "legal representative" is to receive the legacy as a distributee the same as if the daughter had died intestate. *Bates, petitioner,* 159 Mass. 252. *Eager* v. *Whitney,* 163 Mass. 463. *Olney* v. *Lovering,* 167 Mass. 446. *Bailey* v. *Smith,* 214 Mass. 114, 120. *Davies* v. *Davies,* 55 Conn. 319. *Griswold* v. *Sawyer,* 125 N. Y. 411. *Casey* v. *Lockwood,* 24 R. I. 72. *Harton's Estate,* 213 Penn. St. 499. It follows that the legacies in question are to be distributed among those who would respectively have inherited the personal property of each legatee, to be ascertained as of the date of her death.

The distribution is to be made under our laws and the trustees are instructed to pay "ten thousand dollars," one third to Charles B. Davis, and two thirds to Helen Whiting Davis; and to George L. Gilmore, administrator of George Whiting Mitchell, the Commonwealth Trust Company of Pennsylvania, guardian of David E. Mitchell, Jr., and David E. Mitchell, "ten thousand dollars," to be divided equally between them. *Fabens* v. *Fabens,* 141 Mass. 395. *Brandeis* v. *Atkins,* 204 Mass. 471. *Ball* v. *Holland,* 189 Mass. 369, 372, and cases there cited. *Lincoln* v. *Perry,* 149 Mass. 368. *International Trust Co.* v. *Williams,* 183 Mass. 173.

*Holmes* v. *Holmes*, 194 Mass. 552, 559. *Nesbit* v. *Cande*, 206 Mass. 437. R. L. c. 133, c. 140, § 3. St. 1905, c. 256. St. 1917, c. 303. See St. 1920, c. 468, G. L. c. 190, § 1.

The second question relates to the rights of George Whiting Mitchell and David E. Mitchell, Jr., and Helen Whiting Davis, the only surviving grandchildren of the testator. By the thirteenth clause he directs his executors to pay to the trustees "ten thousand . . . dollars for each of my grandchildren now living namely, Helen Whiting Davis, George Whiting Mitchell and David E. Mitchell, Jr.," to be invested and expended for their education "until he or she arrives at the age of thirty . . . years, at which time said sum and its accumulations, or whatever remains thereof not expended . . . shall be paid unto him or her to hold absolutely. After each grandchild arrives at the age of twenty-one . . . years, however," all the income coming to each grandchild is to be expended. "In the event of the death of any grandchild before arriving at the age of thirty . . . years, this fund or any balance thereof held . . . for such deceased grandchild shall revert to and be paid into my residuary estate and be disposed of as provided therein." By the death of George Whiting Mitchell before attaining the age of thirty years, his share with the unexpended income fell into the residue created by the fourteenth clause and became part of the principal. *Rackemann* v. *Wood*, 203 Mass. 501, 506. David E. Mitchell Jr. is not yet twenty-one years of age, and he is entitled to the income as provided in the thirteenth clause. While Helen Whiting Davis is of full age, it does not appear that she is outside the limitation of thirty years, and if not, she is to receive the income on "ten thousand dollars" under the thirteenth clause.

The third inquiry concerns the duties of the trustees in the administration and distribution of two thirds of the trust property remaining under the fourteenth clause. The testator says in the closing words of that clause, "And I do further provide 1. That upon the death of any of my said children leaving issue under the age of twenty-one years, the said Trustees shall have, hold, apply and expend the share of the income above allotted to such my child at their best discretion equally for the benefit, education and support of such issue until they shall arrive successively at the age of twenty-one years, if they shall so long live. And to those

already at that age at the time of the death of any of my said children, and to the others as they shall successively arrive at the age of twenty-one years, the Trustees shall pay to each such portion of the trust property so held for their benefit (and formerly held for the benefit of said deceased child) as the Trustees shall adjudge to be a fair and proportionate share. In the event of the death of such issue before arriving at the age of twenty-one years, the share which he or she would have received when of full age my said Trustees shall pay unto the brothers and sisters, if any, of such deceased issue when arriving at full age.

"2. That, in the event of the death of all issue of any deceased child before arriving at the age of twenty-one years, and also in the event of the death of any of my said children leaving no issue living at the time of her decease, it is my will that the share held by said Trustees for such deceased child or for the issue of such deceased child shall be held by them, and the income therefrom paid by them, for the use and benefit of any children of mine then living, in equal shares, for and during the natural lives of such surviving children.

"3. That, upon the death of all my said children, all said income shall be held, used and expended by said Trustees for the benefit of any and all grandchildren of mine in equal parts and shares, until such grandchildren shall arrive at the age of twenty-one years, and to such grandchildren already at that age at the time of the death of all my said children, and to the others as they shall successively arrive at said age the Trustees shall pay unto each an equal part and share of said trust property.

"4. That in the event of the death of all my children leaving no issue, said Trustees shall transfer, pay over and deliver said Trust Fund unto my heirs-at-law."

The portion of the trust fund which was held for the benefit of Emma S. Davis is now held for the benefit of Helen Whiting Davis who is over twenty-one years old, and should be paid to her as "a fair and proportionate share" of the principal. If this is not done there is no provision for the payment of income on this share and the trustees can indefinitely withhold payment of the principal to the manifest defeat of the testator's purpose. The testator by subsection 2 of the fourteenth clause divides the net rents and profits and income after the provisions for his wife "in

equal third parts and shares," and there is no reason why the division of the principal should not be on the same basis. The trustees are directed to pay to Helen Whiting Davis so much of the principal as in their judgment constitutes a fair and proportionate share but not to exceed one third, to be ascertained on the amount of property on January 15, 1920, the date of the death of Emma S. Davis, with all income on that amount which they have since received. The further provision that after his wife's death "each of my said children shall receive yearly from my estate at least the sum of six thousand . . . dollars," and if this amount is not realized from income the principal of the trust fund may be used to make up the deficit, is applicable only to the entire fund before a partial distribution becomes necessary as directed by the testator. We find no language which sufficiently indicates an intention, that the share of the principal coming to the heirs of a deceased daughter is to be withheld in order to provide an annuity of "six thousand dollars" for a surviving sister or sisters. The testator as we have said intended equality of participation when the time for distribution came.

The income of the share to which David E. Mitchell, Jr. succeeds as a surviving grandson of the testator under the fourteenth clause, is to be paid to his guardian until he becomes of age. It is unnecessary to decide what disposition shall be made of income or principal if he dies during minority.

We have not overlooked the eighteenth clause, that "The bequests, devises and provisions in this Will made and the income therefrom provided for my wife, sisters, children, grandchildren and every provision herein made in trust for anyone, are made subject to the following conditions, restrictions and stipulations, that the interest of the said wife, sisters, children, grandchildren and of anyone for whom a trust is herein constituted in or right to the said trust income for them and each of them provided, shall not be in any way alienable or alienated by them or by any of them by anticipation or otherwise, and shall not be in any way subject to be taken by their creditors or liable for their debts or to be taken therefor, and the payment of the said income of said trust estates are to be made to each of them personally and not in compliance with any assignment, Provided, however, that in case of alienation or attempt at alienation or attachment or seizure

by any process of law or equity the right of any such wife, sister, child, grandchild, or of anyone for whom a trust is herein constituted to receive said income or the payment thereof shall cease forthwith, and thereafter said Trustees instead of paying income or making payments thereof to such wife, sisters, child, grandchild or to anyone for whom a trust is herein constituted shall retain said income in their hands and apply the same thereafter during the continuance of this trust, or until said disability to receive the same is removed, as they shall deem best for said wife, sisters, child, grandchild, or for anyone for whom a trust is herein constituted." But these limitations do not on the record apply to any division of principal among the grandchildren.

The Attorney General has declined to become a party to the suit, and the question of inheritance taxes, if any are due, should be left for settlement as provided by law.

A decree is to be entered in accordance with the opinion, the details of which as well as the amount of costs taxed as between solicitor and client on the fund, are to be settled in the court of probate.

*Ordered accordingly.*