UNION SAFE DEPOSIT AND TRUST COMPANY ET AL., TRUSTEES

*vs.*

FRED V. WOOSTER ET ALI.

Cumberland.    Opinion October 10, 1925.

*In determining the construction and interpretation of a will where a trust is created to terminate on the death of the beneficiary the language "to be divided equally among my heirs" in the residuary clause of the will which embraced the remainder interest in the trust fund, creates a vested interest in those who are heirs at the time of the death of testator.*

*Under the language "then to become the property of my children or their heirs" in a clause creating a trust to terminate on the death of the beneficiary, the remainder on the termination of the trust goes to the children living at the time of the death of the beneficiary and to the heirs of a deceased child as an executory interest.*

In the instant case the testator could have indicated that the determining of his heirs should be referable to a time different than that of his death, but he did not.

The widow was not an heir of her husband. The son and daughter, and they two only, came within the meaning of the term "my heirs." The daughter is dead, but her will lives and it is for the trustees to pay over that which primarily was intended for the daughter, to the authorized representative performing her will.

It is different in the second trust where the testator gives the interest on two thousand dollars to the widow so long as she lives, "Then to go to my children or their heirs." The estate is in trust until the death of the widow. If the children are then living the property is to be theirs, but if a legatee should die in the lifetime of the intervening life beneficiary, then the property is to go over to the heirs of the dead son or daughter. While the precedent beneficiary was living, the daughter of the testator died. Her gift went, not to the testator's heirs, but by substitution to the daughter's heirs, as an executory interest under the daughter's father's will.

The adverb of time—"then"—"then to go to my children"—ordinarily would be construed to relate merely to the time of the enjoyment of the gift, but this word in connection with the disjunctive conjunction—"or,"—and with regard to the wording of the residuary clause, makes it quite impossible to read the will and collect meaning, without perceiving a clear intention to give the two thousand dollars to the children if they survived the widow; otherwise, to the heirs of either nonsurvivor in the stead of the one dead.

On report.   A bill in equity seeking the construction and interpretation of certain clauses in the will of Charles L. Marston who died in Bangor in 1895.   The case was reported on bill and answers. Bill sustained.   Decree as indicated.

The contentions of the parties sufficiently appear in the opinion.

*Sydney B. Larrabee,* for Union Safe Deposit and Trust Company, and *Frank L. Marston,* Trustees.

*James H. McCann,* for Frank L. Marston individually.

*Ralph E. Joslin,* for Fred V. Wooster.

*Cook, Hutchinson & Pierce,* for Fidelity Trust Company.

SITTING: WILSON, C. J., PHILBROOK, DUNN, MORRILL, DEASY, STURGIS, BARNES, JJ.

DUNN, J.   This case was reported on bill and answers to obtain the legal construction of certain clauses in a will.

Charles L. Marston lived in Bangor.   He drew his own will.   The document was proved and allowed soon following his death in 1895. It creates two trusts.   The peculiar testamentary phraseology, as the call is to construe, is this:

"Second.   .   .   .   .   .   I also give her (meaning his wife) fifty dollars per month so long as she remains my widow and wish my administrators to pay it to her the first day of each and every month so long as she so remains and I wish the sum of two thousand dollars to be invested so she can have the interest on it as long as she lives, then to go to my children or their heirs .   .   .   .   .   Meaning in this will to provide well for my said widow's support so long as she remains such but the interest of the two thousand dollars to be paid to her the first of Januray and July as long as she may live, then to become the property of my children or their heirs .   .   .   .   ."

"Third.   I wish and direct that twenty five thousand dollars be permently invested, the interest or so much of it as is nessary be used to pay the above payments, the balance if any be added to the twenty five thousand dollars."

In the sixth item is this clause:

"And the residue of my property after all the above amounts have been paid and provided for to be divided equally among my heirs."

When the will was written there were living, the wife second in marriage to Mr. Marston, the son born of his former wedlock, the

daughter by his second wife, and no other person of immediate relationship to him. The family situation was the same when Mr. Marston died.

The widow, who never did remarry, now is dead. Previous to the death of the widow the daughter had died issueless and testate. Her husband survives, the sole legatee under her will. The testator's son is alive. The two trust funds are the only undistributed assets. And the interest of the son therein is collateral to his obligation to the bank which is one of these defendants. No creditor of the primary decedent is concerned.

What should the one set of trustees of the two trusts do properly to perform their final duties?

The canonically expressed intention of the testator is the very soul and life of the whole matter. When such intention is ascertained, the will must not be construed beyond that of the maker. His manifest intent, validly established in the context of the entire will, must not be trenched upon and overrun.

To start looking forward from the will. The surviving wife is first beneficiary of both trusts. From the one, fifty dollars every month throughout widowhood. On the death or remarriage of the widow, which ever event is earliest to occur, the trust terminates and the sixth or residuary clause disposes of the fund and the unused increment, the testator's diction being, "the remainder of my property after all the above amounts have been paid and provided for." The "above amounts" is comprehensive of the fund for the monthly payments during widowhood and of the two-thousand-dollar corpus of the second trust. The word, "permently" features in the language of the will, but the permanency of testamental contemplation is past, the purpose of the devisor having been accomplished. *Dodge* v. *Dodge*, 112 Maine, 291. And the property in this fund passed, in vested but possession-deferred interest, to and among those persons upon whom the law would have cast distributive succession to Mr. Marston's property at his death, had he died intestate. He could have indicated that the determining of his heirs should be referable to a time different than that of his death, but he did not.

The widow was not an heir of her husband. *Lord* v. *Bourne*, 63 Maine, 368; *Golder* v. *Golder*, 95 Maine, 259. The son and the daughter, and they two only, came within the meaning of the term "my heirs." The daughter is dead, but her will lives, and it is for

these trustees to pay over that which primarily was intended for the daughter, to the authorized representative performing her will.

It is different in the case of the second trust, thus to refer in convenience to the other relation. Here, the testator gives the interest on two thousand dollars, so long as the woman lives, whether in widowhood or no. "Then to go to my children or their heirs." Or, in the emphasis that repetition tends to give, "then to become the property of my children or their heirs."

The intent of the testator is not problematical. The estate is in trust to the death of his widow. If the children are then living the property is to be theirs, but if a legatee should die in the lifetime of the intervening life beneficiary, then property is to go over to the heirs of the dead son or daughter. While the precedent beneficiary was living, the daughter of the testator died. Her gift went, not to the testator's heirs, but by substitution to the daughter's heirs, as an executory interest under the daughter's father's will. *Buck* v. *Paine,* 75 Maine, 582.

The rule is well established that personal property, as well as real estate, is a proper subject of executory interests and limitations. In wills the strictness of the common law, that the gift of a chattel for an instant was a gift forever, and that a limitation over was void, was mitigated in order to carry out the obvious intention of the testator, where the contingency on which the limitation depends is not more remote than the law allows. *Buck* v. *Paine,* supra; *Smith* v. *Bell,* 6 Pet. 68, 8 Law ed., 322; *Doe* v. *Considine,* 6 Wall., 458, 18 Law ed., 869; *Burleigh* v. *Clough,* 52 N. H., 267, 273; 2 Bl. Com., 172 et seq; 11 R. C. L., 473; 40 Cyc., 1644.

The adverb of time—"then"—"then to go to my children"—ordinarily would be construed to relate merely to the time of the enjoyment of the gift, but this word in connection with the disjunctive conjunction—"or,"—and with regard to the wording of the residuary clause, makes it quite impossible to read the will and collect meaning, without perceiving a clear intention to give the two thousand dollars to the children if they survived the widow; otherwise, to the heirs of either non survivor in the stead of the one dead. Such was the sense in which the legator wrote, uncontroverted by any positive rule of law, in willing his property for those he wanted to have it when he got through. The same words, when taken independently, will frequently authorize a construction totally at war with that which

will be at once acknowledged as the legitimate meaning when considered in connection with the whole thought on the same subject.

Of the second or two-thousand-dollar trust, Frank L. Marston, the son, or his assignee, is entitled to share to the extent of one half of the net amount for distribution. The remaining part passed, directly by Charles L. Marston's will, at the moment of his daughter's death, to her "heirs."

As a general proposition wills are supposed to speak in reference to the domicillary laws·of the testator. *Houghton* v. *Hughes,*· 108 Maine, 233; *Lincoln* v. *Perry,* 149 Mass., 368. Accordingly, the widower of the deceased daughter of the testator is not an heir of his deceased wife. *Morse* v. *Ballou,* 112 Maine, 124, 127.

Immediately upon his sister's decease, leaving no issue, father, or mother, nor brother nor sister dead, nor sister living, Frank L. Marston, her only brother, became that sister's sole heir. It follows that the remaining part is his by substitution. *Buck* v. *Paine,* supra; *Gittings* v. *M'Dermott,* 2 Myl. & K., 69; *Brokaw* v. *Hudson's Executors,* 27 N. J. E., 135. And the assignment to the bank is inclusive of this part.

*Bill sustained.*
*Decree as indicated.*