LUCILLE B. TUNNELL, JOHN M. BERRY, JR., HENRY CLAY BERRY,
MERLIN S. BERRY, VELMA A. BERRY, LANDRETH W. BERRY, KAY
BERRY YOUNG, FRANCES C. BARBOUR, MRS. EDWARD W. CAHOON,
EVELYN ANN CROLEY, PHILLIP S. HARRIS, ELIZABETH C. LA VOY,
NICHOLAS D. HARRIS, MARIETTA C. HEOBEAT, CLARY WESTON,
WADE SWINDELL, ELLA S. BERRY, NELL GRACE BERRY, REUBEN W.
BERRY, JR., WILLIAM C. BERRY, LEONA BERRY LUPTON, CARLOS
BERRY, JR., SAMUEL G. JONES, JR., WILLIAM C. JONES, MARY RUTH
JONES SCOTT, CHARLES A. JONES, HOWARD E. JONES, THAD
BROWN, MARY ANNA BROWN WILKINSON, JOHN KENNETH BROWN,
ALEXANDER B. BERRY, III, TIMOTHY B. BERRY, ELVA ANNE BERRY
YATES, HAZEL BERRY BAKER, FRANCES BERRY CAVINESS, SUSAN
SWINDELL WENRICH, MARK EDWARD SWINDELL, DALLAS N.
BERRY, SR., JAMES F. BERRY, EVELYN BERRY PARRY ELLIS,
MARGARET T. PITTMAN, SHIRLEY BERRY PHILLIPS, RICHARD
DUANE BERRY, CHARLES HENRY HALL, C. TIMOTHY SMITH, EUNICE
S. DARDEN, NELLIE B. OUTLAND, JAMES E. BRIDGMAN, SANDRA B.
PARTIN, IRENE B. LASSITER, HARVEY D. WILLIAMS, JR., MICHAEL
V. HOLTON, JACK M. HOLTON, WILBUR CLAY HOLDERBY, HILDAH
JONES MURRAY, Z. VANCE JONES, JR., GEORGIA E. HARRIS, JEAN
HARRIS POTTER, DOROTHY HARRIS IRELAND, MYRA HARRIS MAYO,
JAMES T. HARRIS, RUBY HARRIS WILLIAMS, DORA HARRIS CLAY-
TON, RICHARD BERRY HARRIS, JR., ELLA LOUISE HARRIS, NANCY J.
MUSSEL, BETSY J. NUGENT, MIKE E. JONES, JR., POLLY ANN BERRY
CUTRELL, METRAH WARREN WILLIAMS, CLARENCE SPENCER
HOLTON, JR., MARY ANN J. BEARD, LEWIS B. JONES, VIRGINIA
JONES McKIE, JOSEPH SWINDELL CREDLE, MELINDA CREDLE
EASTON, MARJORIE ANN WILLIAMS, GLENN W. HOLDERBY, HAL
FORD HOLTON, JOHN B. McGOWAN, MARY KATHERYN McGOWAN,
DORMAN J. McGOWAN, JAMES A. McGOWAN, JR., LINDA McGOWAN
McQUEEN, RICHARD BERRY, AND LESLIE JONES, JR., HILDA J. MUR-
RAY v. MRS. JOB BERRY, W. GRATZ SPENCER AND WIFE, MARGARET
M. SPENCER, MORRIS BERRY, ROY CAHOON, WILLIAM CLIFF
CAHOON, HIATT B. CAHOON AND WIFE, NORMA EARLE S. CAHOON,
RICHARD DICKS, CHARLES DICKS, DORTHY DICKS RADCLIFFE,
MILLICENT HARRIS LUPTON, MYRA H. YOUNGS, BOBBY BERRY,
ALEXANDER BERRY CREDLE, GEORGE V. CREDLE, III, CHARLES
BERRY, GUI V. HARRIS, MRS. JAMES BARNES, LEE WILLIAMS, FAN-
NIE CAHOON BOOMER, METTA McGOWAN, DAVID McGOWAN, SCOTT
HOLTON, MRS. ATRIL LILLY, MRS. DORCUS E. CLARKE, MRS. JEAN
ROSS, CAROLYN JONES, SELBY JONES, RUTH HOLTON DALE, CECIL

Tunnell v. Berry

RUBEN HARRIS, AND EASTWOOD HUBERT, AND ANY OTHER PER STIRPES ISSUE OF JOHN BERRY

No. 842SC536

(Filed 5 March 1985)

1. **Wills §§ 33.1, 35.2— contingent devisee—words of purchase—time of vesting —effect of quitclaim deed**

In an action to construe an 1899 will in which the testator devised real and personal property to his son with the following clause, "Further if my son Job dies without leaving children the property herein given to him must be divided equally amongst his brothers and sisters or their heirs," the words "brothers and sisters or their heirs" were words of purchase rather than limitation, and the word "heirs" refers only to those persons "who can answer the roll immediately upon the happening of the contingency . . . ." Thus, the takers under the contingent devise were the heirs of Job's brothers and sisters who were alive when Job died in 1979 without children, and a 1941 quitclaim deed by those persons who would have taken had Job died at that time was not effective to extinguish the rights of their descendants.

2. **Wills § 69; Estoppel § 2— quitclaim deed by contingent devisees—estoppel as to those signing**

A 1941 quitclaim deed by those persons who would have taken at that time under a contingent devise estopped those who executed it and who were still alive from pursuing their claim when the contingency occurred in 1979 because the 1941 quitclaim deed evidenced an intent by the grantors to convey and an expectation that the grantee was going to receive certain benefits.

APPEAL by the plaintiffs from *Stevens, Judge.* Judgment entered 20 January 1984 in Superior Court, HYDE County. Heard in the Court of Appeals 15 January 1985.

This is a civil declaratory judgment action to construe the will of John Berry. Berry died testate about 1899 survived by a wife and ten children. In his will he devised certain real and personal property to his son Job. The will also contained the following clause: "Further if my son Job dies without leaving children the property herein given to him must be divided equally amongst his brothers and sisters or their heirs." By early 1941, all but one of Job's brothers and sisters had died. In 1941, Job's surviving brother and the issue of his other eight brothers and sisters executed a quitclaim deed conveying all their right, title, and interest in the subject property to Job. In February 1979, Job died testate, without ever having children. In his will Job devised

the subject property to his widow for life with a remainder to Walton Spencer. The plaintiffs, who are the lineal descendants of Job's brothers and sisters, filed this action seeking to have the court to construe the will of John Berry and determine their interest in the lands devised to Job Berry.

On 14 November 1983, Judge Stevens sitting without a jury, heard the case in Hyde County Superior Court. On 20 January 1984, he entered a judgment which in pertinent part provided:

FINDINGS OF FACT

. . . .

SECOND: That by deed dated January 20, 1941, as recorded in Book 58, page 424, Public Registry of Hyde County, John H. C. Berry, the only surviving child of John Berry except his brother, Job Berry, together with the surviving children of the other eight deceased children of John Berry, executed a deed conveying and quit-claiming all of their right, title and interest in and to the lands devised by John Berry in his will to Job Berry, his son.

THIRD: That Job Berry died in 1979 leaving a will duly probated in the office of the Clerk of the Superior Court of Hyde County, wherein the lands in controversy were devised to his widow, Maude Elizabeth Swindell Berry, for her life with remainder over to Walton Gratz Spencer in fee simple.

FOURTH: That plaintiffs contend, among other things, that the family of John Berry, as it existed as of the death of Job Berry in 1979, took said lands by purchase under the will of John Berry, when his son, Job Berry, "died without children." On the other hand, the defendants contend, among other things, that the deed to Job Berry purported to bar the interest of each heir of John Berry named therein, including the heirs of such persons, and in addition, purported to bar any further or future claim against this land by such heirs who are, as defendants say and contend, estopped to claim such interest.

. . . .

### CONCLUSIONS OF LAW

FIRST: That the words, "brothers and sisters or their heirs", as set forth in the will of John Berry, are words of limitation rather than words of purchase, serving only to preserve the ancestral shares of such "brothers and sisters". That the interest so created being executory in nature, and although a future interest, is fully transferrable as the beneficiaries were ascertainable at the time they executed the deed to Job Berry in 1941.

AND SECOND: That, moreover, said deed, in the manner and form in which it was drafted and executed to Job Berry, effectively divest, (H. L. S. III) bars and legally estops all of the individuals who signed the deed, including also all of those individuals who assert or claim an interest in the property, either through, by or under them, be they heirs or survivors, from acquiring any rights of possession, claim of title or interest in and to the lands described in the said deed, whatsoever.

It is, therefore, CONSIDERED, ORDERED, ADJUDGED, and DECREED that Job Berry's devise by will of the said lands in controversy to his widow, Maude Elizabeth Swindell Berry, for life with remainder over to Walton Gratz Spencer was absolute and in fee simple, subject only to claims of adverse possession, if any there be.

. . . .

From this judgment, the plaintiff appealed.

*Rodman, Rodman, Holscher & Francisco, by Edward N. Rodman, and Davis & Davis, by George Thomas Davis, Jr., for plaintiff appellants.*

*Wilkinson & Vosburgh, by James R. Vosburgh, for defendant appellees.*

ARNOLD, Judge.

[1] The first issue presented by this appeal is whether the trial court erred by concluding that the words "brothers and sisters or their heirs" in the will of John Berry were words of limitation rather than words of purchase, and that as such they served only to preserve the ancestral shares of the "brothers and sisters."

Words of purchase in wills are those words which designate the persons to whom an estate in land is granted, while words of limitation are those which define the quantum of interest given and fixes the time for the commencement of the estate. The word "heirs" may be used as either a word of purchase or a word of limitation. Although the word "heirs" is primarily used as a word of limitation, when it is used to designate beneficiaries who are to take an estate it is a word of purchase. J. Grimes, *5B Thompson on Real Property* § 2621 pp. 2-3 (1978 Replacement Volume). When a transfer is made to "A and his heirs" the words "and his heirs" are words of limitation and mean that "A" has an estate that is potentially infinite in duration or, put another way, an estate in fee simple. T. Bergin and P. Haskell, *Preface To Estates in Land and Future Interest*, p. 30 (1984). However, in a transfer to "A or his heirs" the words "or his heirs" are words of purchase which designate alternative takers to "A." Grimes, *supra*, § 2622 p. 11. Thus, the trial court erred in concluding that "brothers and sisters or their heirs" were words in limitation which served only to preserve the ancestral shares of the brothers and sisters.

Having determined that "brothers and sisters or their heirs" are words of purchase, the next question presented is what meaning should we ascribe to the word "heirs." The term "heirs" is generally interpreted to mean those persons who come within the intestate succession statute and who are living at the date of the testator's death. However, this general rule is subject to exceptions. *See generally* T. Bergin and P. Haskell, *supra*, pp. 230-232. Our Supreme Court recognized such an exception in *Mercer v. Downs*, 191 N.C. 203, 131 S.E. 575 (1926), where the testator left certain property to his wife for life with a remainder to the testator's "surviving children or their heirs." The court held that: "The language 'our surviving children or their heirs' indicates that the death of the life tenant and not the death of the devisor was the time fixed for the ascertainment of the remaindermen." *Id.* at 206, 131 S.E. at 577. In *Lawson v. Lawson*, 267 N.C. 643, 645, 148 S.E. 2d 546, 548 (1966), the Supreme Court further held that when interests were contingent, that only those persons " 'who can answer the roll immediately upon the happening of the [contingency] acquire any estate in the properties granted.' (Citation omitted.)" The position adopted in *Lawson* is a minority rule which has in some instances had as its effect the disinheritance of

whole lines of a testator's intended takers. *See* T. Bergin and P. Haskell, *supra*, p. 131. While we feel that *Lawson* is in need of further review, nevertheless we are bound by it. Finally, in *Hutchinson v. Lucas*, 181 N.C. 53, 54-55, 106 S.E. 150, 151 (1921), the court stated that "when the holders of a contingent estate are specified and known they may assign and convey it and can make a deed which will conclude all claiming under them, . . . yet 'where the heirs, issue or children are so designated as to take by purchase under the terms of the will, there is no estoppel or rebuttal, as they do not take from their ancestor by descent, but directly from the devisor as purchasers.'"

Applying these principles to the case *sub judice* we conclude that the takers under the contingent devise to Job's brothers and sisters or their heirs were the heirs of Job's brothers and sisters who were alive when Job died without leaving any children. Since these takers were not ascertainable until Job died in 1979 without leaving any children, the 1941 quitclaim deed by those persons who would have taken had Job died at that time was not effective to extinguish the rights of their descendants.

[2] Finally, we must determine whether the 1941 quitclaim deed served to estop those persons who executed it in 1941 and who were still alive when Job died in 1979. "In North Carolina, whether a quitclaim deed . . . creates an estoppel depends upon its language, . . . and there is substantial authority in this jurisdiction for the position that the principle of estoppel will apply when the deed shows that the grantor intended to convey and the grantee expected to acquire a particular estate. . . . (Citations omitted.)" *Realty Co. v. Wysor*, 272 N.C. 172, 178-79, 158 S.E. 2d 7, 12 (1967). The 1941 quitclaim deed evidenced an intent by the grantors to convey and an expectation that the grantee was going to receive certain interests. Thus, those persons who are the heirs of Job's brothers and sisters and who signed the 1941 deed are estopped from pursuing their claim to the property.

For the foregoing reasoning, the judgment of the trial court is reversed and the case is remanded for the entry of a judgment determining the ownership in the property in accordance with the guidelines set forth in this opinion.

Reversed and remanded.

Judges WELLS and MARTIN concur.