Sidney W. ROWETT, Elsie E. Rowett Kosnoski, and Ethel L. Posch, Plaintiffs and Appellants,

v.

Gregor B. McFARLAND, David A. McFarland, First Federal Savings & Loan Association, Rapid City, South Dakota, United States of America (Farmers Home Administration), and Dave Jolley, d/b/a Vador Funds, Defendants and Appellees,

v.

Kenneth D. SNYDER, E. Dean Snyder, and Kay E. Snyder, Defendants and Third Party Plaintiffs and Appellees,

v.

Delores M. McFARLAND, Third Party Defendant and Appellee,

and

Kenneth D. SNYDER, E. Dean Snyder, Kay E. Snyder, Gregor B. McFarland, David A. McFarland, and First Federal Savings & Loan Association, Defendants and Third Party Plaintiffs and Appellees,

v.

John A. ROWETT, Harold Rowett, Grace Ries, Freda Nelson, the Unknown Heirs at Law, Devisees, Legatees, Administrators and Creditors of Raymond D. Rowett a/k/a Ray Rowett, and Frances Rowett, both deceased, the Heirs, Devisees, Legatees, Administrators and Creditors of any of Said Third Party Defendants Who May be Deceased, all Persons Unknown Who Have or Claim to Have any Interest or Estate in or Lien or Encumbrance Upon the Premises Described in the Third Party Complaint, and the State of South Dakota and the Department of Revenue of the State of South Dakota, Third Party Defendants.

No. 15061.

Supreme Court of South Dakota.

Argued Feb. 10, 1986.

Decided Oct. 1, 1986.

Rehearing Denied Nov. 4, 1986.

George A. Bangs, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiffs and appellants.

James H. Wilson, Wilson, Olson, Goodsell & Nash, Rapid City, for defendants and appellees (McFarlands).

Keith R. Smit, Morman, Smit, Shepard, Hughes & Wolsky, Sturgis, for defendants and appellees (First Federal).

Ted L. McBride, Asst. U.S. Atty., Rapid City, for defendant and appellee (U.S. and Farmers Home Admin.).

David E. Morrill and Timothy L. Thomas, Morrill, Hansen, Hubbard & Brown, Rapid City, for defendants and third party plaintiffs and appellees (Snyders).

HERTZ, Acting Justice.

Rowetts appeal from the trial court's entry of summary judgment in favor of appellees McFarland, et al. We reverse and remand.

### Facts

This appeal concerns the determination of the consistently troubling question of whether a remainder is vested or contingent. In assessing case authority from foreign jurisdictions, the only conclusion which may be safely entertained is that the opinions are in conflict.

The focal point of this action is approximately 3,000 acres of real property located in Meade County, South Dakota. The conflict arises from its disputed ownership. Ewell Hanks (Hanks), owned this land and referred to it as the "home place." Hanks died on April 25, 1936. By paragraph six of his Last Will and Testament dated December 17, 1935, Hanks gave his wife, Lena Hanks, a life estate in the "home place" for her lifetime, or until she should remarry, and without power of sale. Hanks disposed of the remainder of this property by paragraph seven of the will, which sets forth the following:

SEVENTH: That upon the death of my said wife, without issue, or if she should re-marry, at the time of her re-marriage, all of the said land herein referred to as "approximately 3000 acres belonging to my home place" shall revert to my estate and shall be divided equally between my son, Harvey Hanks, and my daughter, Frances Rowett, or their heirs.

A Decree of Distribution for the Ewell Hanks estate was entered by the Meade County Court on November 27, 1937. This decree restates the will in its entirety, and

thus reaffirms the life estate in Lena Hanks. It also adopts paragraph seven stated above, however, the last phrase reads, "or *to* their heirs", rather than "or their heirs", as was written in the will.[1] (emphasis added).

Lena Hanks had no children by Ewell Hanks and she never remarried. She died on November 3, 1983.

At the time of his death, Hanks left two surviving children: Harvey Hanks (Harvey) and Frances Rowett (Frances). Harvey died on April 13, 1942. The Decree of Distribution entered in connection with his estate distributed Harvey's one-half remainder interest in the "home place" to Solomon Wartti and to attorney H.F. Fellows (Fellows), an assignee of Wartti.

Frances and her husband Raymond (Ray) Rowett conveyed her remainder interest in the "home place" to George McFarland by warranty deed dated December 28, 1953, for the sum of $8,000. Frances died intestate on October 27, 1975, and left the following heirs: her husband Ray, and her children, appellants Sidney W. Rowett, Elsie E. Rowett Kosnoski and Ethel L. Posch (Rowetts). Frances' estate was not probated.

Ray died intestate February 10, 1980, and left as his heirs the three appellants, and four other children from a previous marriage. These four children were brought into the action as third party defendants after their existence was discovered during the taking of the Rowetts depositions. Ray's estate was not probated.

Through a series of conveyances, Fellows and another attorney, Percy H. Helm (Helm), owned as assignees Harvey's undivided one-half remainder interest in the "home place" which they sold to George McFarland by contract dated December 23, 1953. After abstracts of title showed the title to be free, clear, and merchantable,

Fellows, Helm, and their respective spouses conveyed their interest in the "home place" by warranty deed to George McFarland on January 3, 1955.

George McFarland conveyed his interest in the "home place" to appellee David A. McFarland[2] on October 4, 1976. Lena Hanks and her son, Lloyd Marcotte, a lessee of the "home place", quit claimed their interest in the "home place" to appellees Gregor B. McFarland[2] and David A. McFarland on October 29, 1976. David A. McFarland and his wife, Delores,[2] sold and conveyed their interest in the subject property to the appellees Snyder[2] on July 9, 1982.

On September 25, 1983, Snyder received a letter from one of the Rowetts which indicated a possible claim of ownership in the "home place", which Snyder had purchased some fourteen months earlier. This litigation followed.

Initially, Rowetts prayed for a judgment quieting title to their undivided one-half interest in the "home place." McFarlands denied the validity of Rowetts claim and requested the quieting of title to the one-half interest in themselves. Certain additional parties were joined who are not material to this discussion. Both sides moved for summary judgment.

In granting McFarlands motion for summary judgment, the trial court determined that paragraph seven of Hanks' will was ambiguous. As such, it recognized the presumption of vesting unless clearly designated otherwise, and held that paragraph seven vested the remainder interest in the "home place" to Harvey Hanks and Frances Rowett as of the death of Ewell Hanks. Rowetts appeal to this court.

### Claims of the Parties

Rowetts claim ownership of an undivided one-half interest in the "home place" by

---

1. We consider this inconsistency immaterial to the disposition of this case. We note, however, that a final decree of distribution controls the will even if it is erroneous, so long as the decree was rendered with due process. *Miller v. Thode,* 372 N.W.2d 459, 462 (S.D.1985).

2. For the sake of brevity, the respective appellees: David A. McFarland, Gregor B. McFarland, Delores M. McFarland, Kenneth D. Snyder, E. Dean Snyder, and Kay E. Snyder, shall be collectively referred to as "McFarlands."

virtue of paragraph seven in Hanks' will. They contend that this provision unambiguously created a life estate in Lena Hanks, upon whose death, a contingent remainder passed to their mother, Frances Rowett, *or if she failed to survive the life tenant, then to her heirs* who take the share their mother would have taken if living. (emphasis added). Rowetts contend that Frances' interest, at most, was vested subject to divestment, in the event she predeceased Lena Hanks. Therefore, Rowetts claim that their mother, as well as Harvey Hanks, conveyed nothing to the McFarlands because the remaindermen had no vested interest in the "home place."

McFarlands argue that paragraph seven's use of the phrase "or their heirs" was ambiguous because Hanks failed to use any specific words of survivorship or a time reference, to provide for the event of the remaindermen predeceasing the life tenant. They claim that the ambiguity, coupled with the presumption of vesting, created an indefeasibly vested remainder in Harvey Hanks and Frances Rowett upon the death of Ewell Hanks. As such, McFarlands contend that the respective deeds from Lena Hanks, Frances (and Ray) Rowett, and the assignees of Harvey Hanks, resulted in a complete fee title to the McFarlands, and ultimately, the Snyders, despite the fact that Harvey and Frances predeceased Lena Hanks. McFarlands further assert that any claims of Rowetts are barred by marketable record title and the principle of equitable estoppel.

The issues will be separately stated and so treated.

## I

WHETHER PARAGRAPH SEVEN UNAMBIGUOUSLY CREATED A CONTINGENT REMAINDER IN THE HEIRS OF FRANCES ROWETT?

Were Frances and Harvey's [3] interests vested remainders as claimed by the McFarlands, or were they contingent remainders, or at most, vested subject to divestment as claimed by the Rowetts? The resolution of this question turns on the application of the following guiding principles.

The process of will construction has as its sole purpose the discovery of the testator's intent. *Briggs v. Briggs,* 73 S.D. 500, 506, 45 N.W.2d 62, 65 (1950); SDCL 29-5-1. For it is the testator's intention which is used as a polestar to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy. *Tiffany v. Thomas,* 190 S.E. 101, 103 (Va.1937). "In ascertaining this intention the language used, and the sense in which it is used by the testator, is the primary source of information, as it is the expressed intention of the testator which is sought." *Id.* If that intention is clearly manifested by the language of the will, it is the duty of this court to declare and enforce it. *Briggs,* 73 S.D. at 506, 45 N.W.2d at 65. "If after its language is so considered doubt remains as to the meaning the testator sought to express, his intention will be determined by reconsidering his entire language and the circumstances surrounding the making of the will in connection with established canons of constructional preference." *Id. See:* SDCL §§ 29-5-3 and 29-5-7.

In construing a will, it is an elementary rule that effect must be given to every word of the will, rather than an interpretation which will render any of its expressions inoperative. SDCL 29-5-9. Generally, ordinary words are given their usual and ordinary meaning, and technical words are presumed to be used in a technical sense, unless the context clearly indicates otherwise. SDCL §§ 29-5-11 and 29-5-12. "Words are not to be changed or rejected unless they manifestly conflict with the plain intention of the testator, or unless they are absurd, unintelligible or unmeaning for want of any subject to which they can be applied." *Tiffany,* 190 S.E. at 103.

In *Taylor v. Taylor,* 118 Iowa 407, 92 N.W. 71 (1902), the Supreme Court of Iowa

---

**3.** No party to this proceeding is making claim to the one-half interest of Harvey Hanks.

was faced with a similar factual situation, (discussed more fully, *infra* ), and wrote:

> Courts of justice will transpose the clauses of a will and construe 'or' to be 'and' and 'and' to be 'or' only in such cases when it is absolutely necessary so to do to support the evident meaning of the testator. But they cannot arbitrarily expunge or alter words without such apparent necessity.

*Id.* at 72. *Henkel v. Auchstetter,* 240 Iowa 1367, 39 N.W.2d 650, 654 (1949).

The law favors the early vesting of devised estates and it presumes that words of survivorship relate to the death of the testator, if fairly capable of such construction; and that no estate will be held contingent unless positive terms are employed in the will indicating the testator's intent to annex futurity to the substance of the devise. *Wyman v. Kinney,* 111 Vt. 94, 10 A.2d 191, 194 (1940). *See also:* SDCL §§ 29–5–27 and 29–5–17; *Smith v. Dolan,* 86 S.D. 421, 423, 197 N.W.2d 416, 417 (1972); *Kellar v. Kasper,* 138 F.Supp. 738, 743 (D.S.D.1956). But this rule, like other rules of construction applicable to wills, is intended for use in doubtful cases when the language used is unclear and must give way to any lawful intention of the testator which may be gathered from the four corners of the will. *Tiffany,* 190 S.E. at 103; *Smith,* 86 S.D. at 424, 197 N.W.2d at 417; *In Re Mann's Estate,* 156 Neb. 457, 56 N.W.2d 621, 624 (1953). Thus, the rule favoring early vesting must yield to the principle that the testator's intention as expressed in the will must prevail, if it can be ascertained with reasonable certainty. *In Re Meahl's Estate,* 241 App.Div. 333, 271 N.Y.S. 665, 667 (N.Y.1934); *Wyman,* 10 A.2d at 194; *Henkel,*[4] 39 N.W.2d at 654. "In such case, the vesting of the devise is suspended until the time of the happening of the event." *Wyman, supra.*

In order for this court to hold that Frances Rowett took an absolute vested remainder, it necessarily follows that we interpret "or," appearing in paragraph seven of Hanks' will, to mean "and." McFarlands claim that the phrase "or their heirs" is ambiguous because Hanks failed to use any specific words of survivorship or a time reference. Rowetts claim that the word "or" should be read in its usual disjunctive sense as indicating substitution.

In *Ebey v. Adams,* 135 Ill. 80, 25 N.E. 1013 (1890), the testator, by clause two of his will, gave his entire estate which consisted of both real and personal property, to his widow for life or until her remarriage. Clause three stated that upon the widow's death or remarriage, the property should be sold by the testator's executors, from which proceeds they should pay $1,000 each to two of his grandchildren, and then distribute the residue among the testator's six children "or their heirs." *Id.* at 1014. One of testator's children, a daughter, conveyed her interest in the land, and then died before the termination of the life estate. The court held that the daughter's heirs, and not her grantees, took her share of the estate because the devise over did not vest until the death of testator's widow. *Id.* at 1016. The court stated:

> The words "heir," or "their heirs," are technically words of limitation; but in this and other cases they are used as words of purchase, and always have that operation when it sufficiently appears that the term is used to designate a particular person, or particular persons, who may stand in that relation at the happening of a certain event, or at a certain period, and not to the whole line of heirs in succession. *No one can have heirs while living. The word "or," therefore, as here used, indicates substitution;* and the payment or distribution is to be made at a fixed period, i.e., upon the sale by the executors, after the termination of the intermediate estate. *It would seem clear, therefore, that the persons who are to take are such of the*

---

**4.** See this case for a concise history, review, and critique of the rule, to-wit: "Many of the reasons which generated the favoritism [toward the presumption of early vesting] have long been nonexistent. It is no longer an important rule of construction, and should not be." *Henkel,* 39 N.W.2d at 654–655.

*children as might be living at the time of the distribution, and the heirs of such as might have predeceased.* It follows, when this language is considered in connection with the context, that there was here created an alternative devise. (emphasis added).

*Id.*

In *Taylor, supra,* the testator's will devised all of his real and personal property to his wife for life, and at her death or remarriage, the property was to be equally divided "between [testator's] children or their heirs as the law directs." 92 N.W. at 71. Inasmuch as the Iowa Code made technical words unnecessary in creating a fee,[5] the court stated that to construe "or" as "and" would render the clause meaningless, as without it, the fee would have passed to the children anyway. *Id.* at 72. The court further stated that there appeared no reason to believe "or" was intended for "and," nor that it was not designedly employed to express the testator's real intention. *Id.* Therefore, regarding the words "or their heirs" as words of purchase, the court held that the heirs of a child dying before the life tenant took under the will, and not by descent, and thus, the remainder was contingent. *Id.* at 73.

McFarlands insist that without specific words of survivorship, Frances' interest must have vested at the time of Ewell Hanks' death. *See:* SDCL 29–5–17. However, in *Schaeffer's Adm'r v. Schaeffer's Adm'r,* 54 W.Va. 681, 46 S.E. 150 (1903), the court stated:

... [T]he rule that reads a gift to survivors simply as applying to objects living at the death of the testator is confined to those cases in which there is no other period to which survivorship can be referred, and that, where such gift is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and of those only.  (citation omitted)

*Id.* at 151. In this case, a will gave testator's widow a life estate, with power to sell some realty as well as consume its proceeds, and then it directed: "At the death of my wife what real estate and personal property may be left shall be sold, and divided equally among my children, or their children, or their representatives." *Id.* at 150. The testator died leaving his widow. Two of his sons gave deeds of trust to secure debts on their interest in their father's estate. Each son predeceased the widow, and both of them were survived by children. *Id.* In a contest between the (deceased) sons' creditors and the sons' children, respectively, the court stated:

... [T]he force of 'or their children' is equivalent to 'in case of their death'; that they provide those who take in place of the first legatee; that they make a condition on which the vesting of any estate depends; that they have the effect to give only a contingent remainder to [testator's] children, preventing any estate in them at the testator's death.

*Id.* at 152. The court thus held that the deeds of trust given for the debts of the testator's two sons, both of whom died before the life tenant, had no effect upon the testator's property as against the children of such sons. *Id.* at 153.

In *Mercer v. Downs,* 191 N.C. 203, 131 S.E. 575 (1926), the testator's will gave a life estate in a 500 acre tract of land to his wife for her lifetime, "and at her death to go to our surviving children or their heirs." *Id.* 131 S.E. at 576. The court characterized the remainder interests as contingent, and held that the language of the will created substitute or alternate remainders which were contingent on the death of any of testator's children during his wife's lifetime. *Id.* 131 S.E. at 577. "[T]he remaindermen could not be ascertained with certainty until the termination of the life estate." *Id.*

In *Tiffany, supra,* the disputed clause in the testator's will devised real property to

---

5. Our comparable statute is codified at SDCL 29–5–13. *See also:* SDCL 29–5–14: "The term 'heirs,' or other words of inheritance, are not requisite to devise a fee, ..." Predecessors of both of these statutes were in effect when Hanks' will was drawn.

his sister for her lifetime, and then provided: "at her death it is to go to [another named sister] or her heirs." 190 S.E. at 102. The court held that the first sister took a life estate, and that if the second sister predeceased the first, then the second sister's children took the remainder in fee. *Id.* at 103.

This initial sampling of authorities supports the conclusion reached in *Fisher v. Barcus*, 14 Del.Ch. 324, 127 A. 53 (1924). The court wrote:

> Whatever may have been the rule formerly, the weight of authority now is that a gift after a life estate to 'A. or his heirs' creates a substitutionary right in the heirs, who in case of A.'s death before the period of payment take in their own right as substitutes in place of A. in whom no transmissible and indefeasible interest had vested.

*Id.* 127 A. at 55.

For other cases giving a similar meaning to the word "or," and thus finding contingent remainders or vested remainders subject to divestment, *see: In Re Evans' Will*, 234 N.Y. 42, 136 N.E. 233 (Ct.App.1922); *Potter v. Potter*, 306 Ill. 37, 137 N.E. 425 (1922); *In Re Kidder's Estate*, 121 Misc. Rep. 285, 200 N.Y.S. 783 (1923); *Union Safe Deposit & Trust Co. v. Wooster*, 125 Me. 22, 130 A. 433 (1925); *Levings v. Wood*, 339 Ill. 11, 170 N.E. 767 (1930); *Waxson Realty Corporation v. Rothschild*, 255 N.Y. 332, 174 N.E. 700 (Ct.App. 1931); *Heitzig v. Goetten*, 347 Ill. 619, 180 N.E. 428 (1932); *Delaware County Trust Company v. Hanby*, 19 Del.Ch. 228, 165 A. 568 (1933); *George v. Widemire*, 242 Ala. 579, 7 So.2d 269 (1942); *Albergotti v. Summers*, 205 S.C. 179, 31 S.E.2d 129 (1944); *Dodd v. McGee*, 354 Mo. 644, 190 S.W.2d 231 (1945); *Henkel, supra; Mann's Estate, supra; Brownell v. Leutz*, 149 F.Supp. 98 (D.N.D.1957); *Tunnell v. Berry*, 73 N.C. App. 222, 326 S.E.2d 288 (1985); *Annot.*, 128 A.L.R. 306 (1940) and cases cited therein.

However, in some cases involving a testamentary gift of an estate to A for life, remainder to B "or his heirs," the quoted or similar words were treated, under the circumstances, as merely descriptive of the interest of B, as words of limitation, as equivalent to "and his heirs," or as surplusage, so that B had an indefeasibly vested remainder at the testator's death. See cases cited at 128 A.L.R. at 325–331. There is additional support for the supposition that when a testator manifests no expressed intent to use the word "heirs" as a word of purchase, then it is construed as a word of limitation, and thus, remainder to B "or his heirs" vests in B at the testator's death. *Id.* 326 S.E.2d at 310–311.

As was said in *Wyman, supra:*

> There is also a class of cases, somewhat numerous, where the word "or" is interposed between the name of the first legatee or devisee and the heirs of such person,—as, to A. or his heirs, forever, or in tail,—in regard to which there has been considerable discussion, and where there does not seem to be perfect coincidence. Some of the earlier cases where this occurs incline to treat the variation from the usual form of creating such limitations as merely accidental, and as not being intended to create any different estates. The cases where the word "or" being interposed between the name of the first devisee or legatee and his heirs [has] been held to indicate the intention of substituting the latter in place of the ancestor are numerous, and, being more recent, as a general thing, and more in consonance with the words used, must be regarded as defining the most reliable rule. (citation omitted).

10 A.2d at 194.

Here, nothing in Hanks' will indicates that it was unskillfully drafted which may have otherwise prompted us to construe "or" as "and," with the result that "or their heirs" become words of limitation. On the contrary, paragraph three of the will devised some 320 acres of land to Frances Rowett and provided: "to her and her heirs forever, ..." Similarly, paragraph four gave Hanks' wife certain described personal property by providing: "I give, devise and bequeath unto my wife,

Lena Hanks, to her and her heirs, . . ." By using the words *"and her heirs"* in paragraphs three and four, Hanks demonstrated his ability to create an absolute fee limited to the named devisee or legatee.

■ In paragraph six, Hanks gave his wife a life estate in the "home place" for her lifetime, or until remarriage, and without power of sale. No words of gift were used to indicate the final vesting of the residuary estate until the seventh paragraph of the will. There we find the time fixed when the division was to be made, not upon Hanks death, but after the death of the life tenant. *Meahl's Estate*, 271 N.Y.S. at 667–668. By restricting the life tenant's use of the property to "without power of sale," we find that Hanks intended to retain the "home place" in his own bloodline, by disposing of it to those who would be the natural objects of his bounty. *Tillotson v. Carpenter*, 61 S.D. 570, 575–576, 250 N.W. 339, 341 (1933). Paragraph seven is the only one in which Hanks used substitutional language to dispose of the residue by providing that it should be divided equally between his two children, *"or their heirs."* Inasmuch as no one can have heirs while living, *Ebey, supra*, we find the word "or," as used here, indicative of substitution. We further find that Hanks intended to use the word "heirs" as a word of purchase in view of his intent to finally vest the "home place" in the objects of his bounty: his children, or their heirs. *Tillotson, supra; George*, 7 So.2d at 273.

■ McFarlands contend that paragraph nine conclusively shows that Hanks knew how to devise a contingent remainder by using appropriate language to designate a time reference. As such, they claim his failure to use similar language in paragraph seven militates against interpreting the phrase "or their heirs" as words of purchase. Paragraph nine states the following:

> NINTH: That upon the death of my said wife, Lena Hanks, without issue, or upon her re-marriage, that the home in Sturgis, South Dakota, shall be sold and the money received from the sale of said home shall be divided equally between Frances Rowett and any children that she may have at that time; Harvey Hanks and any children that he may have at that time; Alden Marcotte, Laura Marcotte and Lloyd Marcotte, in equal proportions to each of said persons, it being the intention that the children if any of Harvey Hanks and Frances Rowett shall share equally with the persons named in this devise.

We are not persuaded by this argument. Thus, we do not find paragraph nine determinative of Hanks' ability to create contingent remainders especially in light of paragraphs three and four, and his use of the word "or" in the disputed paragraph. Hanks intention, as ascertained by the language employed in the four corners of the will, does not justify attributing the meaning of "and" to "or" in paragraph seven.

"In the absence of any showing to the contrary, we are to assume that the testator selected language adapted to express his meaning, and that he knew and appreciated the effect of the language used in the will." (citations omitted). *Henkel*, 39 N.W.2d at 653. Therefore, having determined that Hanks intended to use "or" in its usual disjunctive sense of substitution, and "heirs" as a word of purchase, we next turn to the nature of the remainder interests he intended to create in his children and heirs by the use of said word.

In *Wyman, supra*, the devise was strikingly similar to the case before us. The testatrix died in July, 1901. By the terms of her will she disposed of her property as follows:

> I give, devise and bequeath to my husband . . . all my real estate and personal estate . . . during his natural life for his use and benefit, and after his decease I give and devise the same to my three daughters, Hattie, Libbie and Nellie to be equally divided among them, or their heirs.

10 A.2d at 193.

After the testatrix's death, her husband occupied the land until his death in 1938.

During the life tenancy, the husband and three daughters gave mortgages on the real estate. Libbie and Hattie predeceased their father, and each of them left children who survived him. In reversing a decree of foreclosure, the court said:

> From our examination of the matter it seems clear that the testatrix intended to impose the condition that the named children be living at the death of the life tenant in order that their estates vest in them in interest as well as possession and that otherwise the heirs of such as may have deceased prior to that time would take in possession what their ancestors would have taken if they had survived the life tenant. *In other words it must be considered that the testatrix intended to create as to the named children contingent and not vested remainders for when a condition of survivorship of the life tenant is imposed, the remainder thus created is one of contingency.* * * *
> *This is so because in such a case time is of the substance of the devise and the event upon which it is limited to take effect, the survivorship of one over another, is always an uncertain and dubious event.* (emphasis added).

*Id.* at 195.

The opinion quotes extensively from the *Ebey* and *Taylor* cases, discussed *supra*, and concluded the following:

> It follows from what we have said that the named daughters had, during the life of the life tenant, only contingent remainders. The vesting of the estates in interest, as well as in possession depended upon their surviving the life tenant. As both Libbie and Hattie died before the termination of the life estate leaving heirs, it also follows that said daughters took no interest under the will which they could convey or encumber as against their heirs. The persons standing in relation of heirs to them took under the will as purchasers and not by descent the shares that the deceased daughters would have taken had they

survived, unencumbered by the mortgages in question.

*Id.* 10 A.2d at 196.

In *Cleere v. Riley,* 123 Misc.Rep. 9, 204 N.Y.S. 44 (1924), the testator gave his entire estate of real and personal property to his wife for life, and after her death his will provided, "said property shall be divided equally among my children or their heirs." Action was brought by a daughter of the testator who sought to partition her portion of the property described in the will. At this time, the testator's wife was still living. *Id.* 204 N.Y.S. at 44.

The court enunciated the question presented as: Whether the daughter has such a vested remainder, as tenant in common in the premises, as will entitle her to maintain an action in partition? In holding that she did not, the court stated:

> It will be observed that the time of division of the property among the children is expressly postponed until after the death of the mother, and that the direction is that then the division shall be had, not between the children, *their heirs, devisees, or assigns,* but between the children *or their heirs.* In other words, they were, until then, to have no title which they could alienate by will or by deed, and in event of death before their mother, as has with one happened, they were to have no interest whatever in the property. In event of their prior death, the interest which they otherwise would have obtained was given directly to those who might then be their legal heirs. (emphasis in original).

*Id.* 204 N.Y.S. at 45.

In *Meahl's Estate, supra,* the testator gave all of his real and personal property to his wife for life, by paragraph two of his will. Paragraph three provided that after her death, the residue "shall be equally divided between [testator's named son and daughter] or their heirs, next-of-kin." 271 N.Y.S. at 667. Testator's daughter predeceased the life tenant. After finding important the fact that the testator chose to finally vest the residuary estate in the third paragraph of the will, instead of using

words of gift in paragraph two which created the life tenancy, the court stated:

> One of the subordinate rules (of construction) is that when the only gift is found in the direction to pay or distribute at a future time, the gift is future and not immediate; contingent, but not vested. Its reason is plain; the direction has no reference to the present, and can be executed only in the future, and if in the meantime the donee indicated shall die, the direction cannot be executed at all. (citation omitted).

*Id.* at 668.

The court found that paragraph three evidenced the testator's intention to postpone the time of final vesting of the residuary estate until the time fixed for distribution of the property, which was the termination of the life tenancy by his wife's death. *Id.* The court held:

> In the setting in which we find it in the third paragraph, we interpret "or" as a word of substitution whereby the testator intended to provide that, if either his daughter or son or both should not survive his wife, then upon the latter's death, when his estate should be divided, the heirs or next of kin of either or both his children should be substituted as beneficiaries.

*Id.* at 668–669.

The foregoing authorities convince us that Hanks intended to impose a condition precedent, SDCL 29–5–29, upon Frances and Harvey, to-wit: that they be living at the death of the life tenant. As such, the vesting of their remainder interests in the "home place," as well as their possession, depended upon them surviving Lena Hanks. Where a testamentary disposition is made upon a condition precedent, nothing vests until the condition is fulfilled. SDCL 29–5–30. When survivorship is a condition precedent to the taking of a remainder, the remainder is contingent. *Henkel,* 39 N.W.2d at 664. A future interest entitles the owner to possession of the property only at a future period. SDCL 43–3–7. A future interest is contingent while the person in whom it is limited to take effect remains uncertain. SDCL 43–3–11. At the time of Hanks' death, whether Frances would take her interest in the "home place" was an uncertain and dubious event because her ability to do so was contingent upon her surviving the life tenant.

Although paragraph seven does not contain words like "surviving" or "then living," the factor of survivorship is nevertheless implicit in the language used and the thought expressed. The day of distribution was marked by the death of Lena Hanks. By using the word "or" in its usual sense of substitution, paragraph seven unambiguously provided for the reversion of the "home place," (following termination of the preceding life interest), back to Hanks' estate where it should be equally divided between his children who might be living at the time of distribution, or the children of such who might be predeceased. *George,* 7 So.2d at 271. As stated in *Ebey:*

> Such of the children as were living at the time of the distribution, would take, and such persons as would fall under the designation of "heirs" of such as had predeceased would take the share or portion that their ancestor would have taken if living. The vesting of the estate in interest, as well as in possession, in the children of the testator, depended upon their surviving the day of distribution. In other words, time is of the substance of the gift, and related to the vesting of the legacies in interest, as well as in possession.

25 N.E. at 1016.

It being shown that Hanks' daughter, Frances Rowett, failed to meet the contingency set forth in paragraph seven by dying before the termination of the precedent life estate, it follows that she took no interest in the "home place" under her father's will. But Frances' heirs, the Rowetts, were entitled upon the death of Lena Hanks to take under the will, and as purchasers, the one-half remainder share Frances would have taken had she survived the day of distribution. *Ebey, supra.* Thus, Frances' contingent remainder vest-

ed in the Rowetts when the contingency was removed by the death of Lena Hanks. *Smith,* 86 S.D. at 430, 197 N.W.2d at 421.

Having held that Frances had no interest in the "home place," we further hold that her conveyance by warranty deed to George McFarland was void *ab initio.*[6] Accordingly, we reverse the trial court's entry of summary judgment in favor of the McFarlands, and hold that Frances Rowett's remainder interest was contingent.

■ We further mention that McFarlands' assert, based on SDCL 43–3–10,[7] that because Frances and Harvey were specifically identified in paragraph seven, and thus had an immediate right of possession in the property, it follows that their remainder interests were vested. However, this statute characterizes the person in being's right as either "defeasible" or "indefeasible." Thus, even if we considered this to be the case here, the result would not be altered. At most, Frances' interest would have been vested subject to divestment. Therefore, in view of Frances and Harvey's deaths before the life tenant, their interests would then have been divested and would thereupon have passed by substitution under the will to their heirs, unhampered by the erroneous conveyances. *Wyman,* 10 A.2d at 196. *See also: Delaware County Trust Co.,* and *In Re Evans' Will, supra.*

## II
## WHETHER ROWETTS CLAIMS ARE BARRED BY MARKETABLE RECORD

TITLE AND THE PRINCIPLE OF EQUITABLE ESTOPPEL?

It is insisted that the Rowetts are estopped by marketable record title from asserting their claim to the "home place."

In addition to McFarland's claim that paragraph seven of Hanks' will was ambiguous and therefore the presumption of vesting applied, they also raised the defenses of marketable record title pursuant to SDCL Ch. 43–30, and equitable estoppel.

The trial court's decision encompassed only the ambiguity claim and held that Hanks' will was ambiguous, thus invoking the presumption of vesting, thereby vesting the remainder interest in the "home place" in Harvey Hanks and Frances Rowett as of the death of their father, Ewell Hanks. The trial court having so decided, did not reach nor rule on McFarland's claims under the Marketable Title Act, nor equitable estoppel.

■ Although McFarlands raised both the marketable record title and equitable estoppel issues before the circuit court,[8] they have not complied with the notice of review requirements set forth in SDCL 15–26A–22.[9] Noncompliance with this statute's requirements for notice of review results in a waiver of the issues, and this court will not consider them. *Gratzfeld v. Bomgaars Supply,* 391 N.W.2d 200, 202 (S.D.1986). *See also: State v. Holland,* 346 N.W.2d 302, 306 (S.D.1984); *Application of Northwestern Bell Telephone*

---

6. As noted *supra,* Hanks explicitly stated that Lena Hanks' life use of the "home place" was "without power of sale." He similarly designated her life use of the Sturgis home in paragraph eight. Therefore, we would also hold Lena Hanks' quit claim deed for the "home place" to McFarlands as void *ab initio.*

7. SDCL 43–3–10 provides:
   Vested future interest defined. A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property, upon the ceasing of the intermediate or precedent interest.

8. *See:* Snyder's Memorandum of Law in Support of Motion for Summary Judgment, Settled Record at 280–316, and McFarland's Memoran-

dum of Law in Support of Motion for Summary Judgment, Settled Record at 332–351.

9. SDCL 15–26A–22 provides:
   Appellee's right to obtain review. An appellee may obtain review of a judgment or order entered in the same action which may adversely affect him by filing a notice of review with the clerk of the Supreme Court within twenty days after the service of the notice of appeal. The clerk of the Supreme Court shall not accept for filing such notice of review unless accompanied by proof of service of such notice on all other parties. The notice of review shall specify the judgment or order to be reviewed.

*Company,* 326 N.W.2d 100, 104 (S.D.1982). In light of our reversal of the trial court on the only issue decided by it, and considering the equities involved in this case as well as the Rowetts' failure to assert their claim in a more timely fashion, we remand to the circuit court for trial upon the issues of marketable record title and equitable estoppel.

All the Justices concur.

SABERS, J., not having been a member of the court at the time this action was submitted to the court, did not participate.