David A. McFARLAND and Delores M.
McFarland, Plaintiffs/Appellants,

v.

James W. McFARLAND, Dale L. Morman
and Bruce J. Walker, as Executors of
the Estate of Gladys E. McFarland, De-
ceased, Defendants/Appellees.

No. 17043.

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1990.

Decided May 29, 1991.

Reed C. Richards, Deadwood, for plain-
tiffs/appellants.

Keith R. Smit, Sturgis, for defen-
dants/appellees.

HENDERSON, Justice.

PROCEDURAL HISTORY/ISSUES

David A. McFarland and Delores M.
McFarland made a claim against the Estate
of Gladys McFarland, alleging breach of
covenant of a warranty deed between
George McFarland, Gladys' husband, as
grantor and David McFarland as grantee.
The deed was dated October 4, 1976.

The claim was denied by the Executors
of the Estate. Thereafter, David and De-
lores McFarland brought suit in circuit

court pursuant to the applicable statute. SDCL 30–21–41.

Both parties agreed to submit this matter to the trial court on a Stipulation of Fact. The claim filed by David and Delores McFarland was denied by the trial court on September 29, 1989, with Findings of Fact and Conclusions of Law entered on November 20, 1989.[1] David and Delores McFarland argue three issues on appeal:

(1) May appellant sustain a claim for breach of warranty on real estate sold to him by his deceased father against his mother's estate?

(2) Did appellant adequately trace the proceeds of the real estate sale to his mother's estate?

(3) Does the settlement of litigation in the Rowett v. McFarland case have an effect on the issues herein?

We affirm. Issues 1 and 2 will be discussed together. We decline to address the third issue, deeming it to be without merit.[2]

## FACTS

On December 28, 1953, George McFarland, father of David McFarland, bought some property in Meade County from Francis Rowett, pursuant to a warranty deed. On October 4, 1976, David and Delores McFarland purchased this property from George McFarland, also by warranty deed. On July 9, 1982, David McFarland sold portions of this acquired property to E. Dean Snyder and Kay E. Snyder.

In 1984, the Rowetts sued the Snyders and McFarlands, claiming ownership in the property transferred by Francis Rowett to George McFarland. In Rowett v. McFarland, 394 N.W.2d 298 (S.D.1986), it was determined that the deed from Francis Rowett to George McFarland was void ab initio. ·The case was remanded to the trial court to determine whether the Marketable Title Act of this state and the principle of equitable estoppel would apply to the case.

After the remand of Rowett, the parties reached a settlement prior to the retrial of the case. David and Delores agreed to pay $36,153.13 in damages and attorneys fees.

George McFarland died on December 3, 1982. His estate distributed property to his children and also provided for a pretermitted heir, with the residue of his estate being distributed to his wife, Gladys McFarland. Gladys McFarland died on March 9, 1987. After the remand of the Rowett suit, David and Delores McFarland filed a claim against her estate for damages resulting from the breach of the warranty by George McFarland. This claim was rejected by the executors whereupon the instant suit was brought.

## DECISION

*David and Delores McFarland may legally place a claim for breach of warranty on real estate sold to them by their deceased father against their mother's estate in equity. However, they did not properly trace the proceeds of the real estate sale to their mother's estate. Therefore, their claim was properly denied.*

SDCL 43–25–14 provides:

The heirs and devisees of any person who has made any covenant or agreement in reference to the title of, in or to any real property, are answerable upon such covenant or agreement to the extent of the land descended or devised to them, in the cases and in the manner prescribed by law.

This statute clearly serves to limit liability to situations where an heir or devisee is in actual receipt of the property against which the original claim has accrued. Where an heir is not in receipt of certain property, there is no recovery. This stat-

1. Findings of Fact and Conclusions of Law are not necessary as to determinations made by way of stipulation. SDCL 15–6–52(b).

2. The estate of Gladys McFarland was not a party to the Rowett v. McFarland suit, did not participate in any settlement agreement entered into by Appellant and various parties, and the matter was not litigated to completion as to issues previously outlined by this Court. Therefore, said case cannot be held to be binding upon a non-party to that suit.

ute prevents an heir or devisee from liability for which the heir or devisee is unable to pay or for which no benefit was conferred.

■ Both parties stipulated to Stipulation of Fact XIII which expresses: " ... at no time did Gladys B. McFarland hold any interest in the real property, nor did she claim any homestead in the same." And, "Gladys McFarland ... was not a party to the deed ... from George B. McFarland to David McFarland." Another stipulation provided: "at no time was Gladys McFarland in the chain of title to the real property, and she had no interest in the same." Stipulation of Fact XVIII.

Therefore, since both parties agreed that no interest in the property reached the Estate of Gladys E. McFarland, SDCL 43–25–14 requires an interpretation that David and Delores McFarland do not have a legal claim against Gladys McFarland's estate.

■ However, under an equitable theory, David and Delores may have a claim. George McFarland's estate was increased by the proceeds from the sale of the realty in question. That estate, under the facts here, then passed mostly to his wife, Gladys. Her estate was not reduced by the liability later accruing to George's estate because of his warranty deed to David and Delores McFarland. Thus, it appears that if their claim is not allowed, the Estate may be reaping a windfall because David and Delores' claim arose too late to be asserted against George.[3]

Enter now a question of constructive trust.

SDCL 55–1–11 provides:

**Implied trust—Declaration by court of equity.** The enumeration in §§ 55–1–7 to 55–1–10, inclusive, of cases wherein an implied trust arises does not exclude or prevent the arising of an implied trust in other cases nor prevent a court of equity from establishing and declaring an implied, resulting, or constructive trust in other cases and instances pursuant to the custom and practice of such courts.

In *Knock v. Knock,* 80 S.D. 159, 120 N.W.2d 572 (1963), we stated that a constructive trust is imposed not because of the intention of the parties, but is a remedial device of equity for the restoration of the status quo. We have also stated that constructive trusts are largely based upon the doctrine of unjust enrichment. *Stemper v. Stemper,* 403 N.W.2d 405 (S.D.1987).

According to 89 C.J.S. *Trusts* § 142:

Generally, any transaction may be the basis for creating a constructive trust where for any reason the defendant holds funds which in equity and good conscience should be possessed by the plaintiff, and the forms and varieties of constructive trusts are practically without limit.

Before a court can impose a constructive trust, there must be a showing of fraud or unconscionable conduct:

It has been broadly held that fraud actual or constructive is an essential element in the creation or existence of a constructive trust, although strictly speaking, constructive trusts have no element of fraud in them, the court merely using the machinery of a trust to afford redress in cases of fraud. More precisely, some fraudulent or unfair and unconscionable conduct is essential to create a constructive trust, there must be some unjust enrichment on the part of the trustee by something passing from the beneficiary or from someone else on the beneficiary's behalf; and no such trust arises when there are no circumstances which make it inequitable for one to hold absolute title to the property against another. As otherwise expressed, in order to establish a constructive trust, there must be some element of fraud either positive or constructive, which existed at the time of the transaction which influenced the cestui que trust, or there must exist a confidential relationship and undue influence by virtue of which a person had obtained legal title to property which he ought not in equity and good conscience hold and enjoy. 89 C.J.S. *Trust,* Item 139(b).

3. The time for bringing the suit against George had lapsed.

Further, the fraud which must be present, in order to impose a constructive trust, must exist at the inception of the title to the property:

In order that fraud or other wrong doing may give rise to a constructive trust, it must exist at the inception of title to the property, or inhere in the transaction by which the trustee acquires the title, and fraudulent acts or admissions subsequent to the acquisition of title are not connected therewith do not give rise to a constructive trust. 89 C.J.S. *Trust*, 139(c).

■■■ The circuit court concluded that there had been no showing by David and Delores McFarland of any fraud or unconscionable conduct warranting the imposition of a constructive trust. We agree. Even if fraud or unconscionable conduct was shown, David and Delores McFarland must still be able to trace the funds upon which a constructive trust could be imposed. When an estate passes to a successor, a constructive trust will follow the trust res through all changes in its state, so long as such property, its product or its proceeds is capable of identification. 76 Am.Jur.2d, Trusts §§ 251, 262 (1985).

The circuit court noted in its second memorandum opinion which was incorporated by reference into the Findings of Fact and the Conclusions of Law:

Here, the trust res, or amount expended, is apparently *an* ascertainable sum of money. In this court's opinion, that amount *may* be asserted as a valid claim against the executors of the Estate of Gladys E. McFarland. (Emphasis supplied).

■■ David and Delores McFarland attempt to interpret the above as a determination that a constructive trust is appropriate in this case. However, the circuit court merely determined that the amount expended "is apparently *an* ascertainable sum of money." Although this may be true, it does not change the fact that there is no evidence as to the identification of what amount of money George's estate received concerning this matter or any following of

those funds through Gladys' estate in order to impose a constructive trust.

We decline to invoke the constructive trust doctrine nor do we invoke equity jurisdiction because there has been no ascertainment of the amount of money which George's estate was increased and passed through Gladys' estate.

Affirmed.

MILLER, C.J., WUEST, J., and MORGAN, Retired J., concur.

SABERS, J., concurs in result.

AMUNDSON, J., not having been a member of the court at the time this case was considered, did not participate.

SABERS, Justice (concurring in result).

It is clear that David has no claim against his *mother's* estate based on a warranty of title made by his *father* under SDCL 43-25-14.

The majority points out that fraud "must exist at the inception of the title to the property" to impose a constructive trust. The majority then states: "The circuit court concluded that there had been no showing ... of any fraud or unconscionable conduct warranting the imposition of a trust. We agree." Despite this unequivocal conclusion, the majority then proceeds to tackle the "tracing" problem, which obviously need not be reached. By discussing this tracing problem when it is not necessary, the majority incorrectly implies that an implied trust is created whenever one can trace the funds. I cannot agree that that is a correct statement of the law.

This case is more appropriately controlled by SDCL 55-1-6 through 55-1-11 and *Matter of Estate of Jahnel*, 428 N.W.2d 528 (S.D.1988). If an implied trust could not be declared in *Jahnel*, certainly none can be declared here. Because the facts here are not sufficient even under SDCL 55-1-11, we should affirm the trial court without reaching the "tracing" problem.